STATE OF MISSOURI V. BRANSTETTER, APPELLANT.

1. **Practice, criminal**: INSTRUCTIONS. It is the duty of the court in the trial of a criminal case to give proper instructions, defining each crime of which under the indictment the accused can be convicted, and of which there is evidence in the case.

2. ——, ——: ——: MURDER: MANSLAUGHTER: EXCUSABLE HOMICIDE. When upon a trial for murder there is evidence given tending to show that deceased used personal violence toward the accused, the court should by proper instructions define the crime of manslaughter as well as murder and excusable homicide, though the defense fails to ask such instructions.

3. **Criminal law**: EVIDENCE. When the State has put in evidence in a criminal case, an admission of the accused made in the course of a conversation, the accused is entitled to have the whole of the conversation concerning the subject matter of the prosecution go to the jury.

4. **Jury**: VERDICT: MISCONDUCT. It is such misconduct as will invalidate a verdict in a criminal case, if the jury arrive at it through an agreement that each juror shall designate the term for which he thinks the defendant should be imprisoned, that the aggregate of these figures shall be divided by twelve and this quotient shall be the verdict.

5. **Misconduct**: WITNESS: JUROR. A member of the jury is not a competent witness to prove such misconduct.

*Appeal from Audrain Circuit Court.*—HON. GILCHRIST PORTER, Judge.

*W. O. Forrist, McFarlane & Trimble*, for appellant.

1. It is misconduct on the part of a jury, in arriving at a verdict in a case of felony, to agree among themselves that each juror shall secretly ballot a number, representing the number of years that he thinks the accused should be confined in the penitentiary, and that the twelve numbers thus secretly balloted shall be added together, and the sum thereof shall be divided by twelve, and that the whole numbers in the quotient thus obtained shall be the punishment of the accused at all events and absolutely; and in pursuance of such agreement, to so find a verdict and

assess the punishment of the accused is such misconduct that the verdict will be set aside. *Sawyer v. Han. & St. Joe R. R. Co.*, 37 Mo. 264; *Mitchell v. Ehle*, 10 Wend. 595; *Thompson v. Perkins*, 26 Iowa 486; *Ruble* v. *McDonald*, 7 Clark 90; *Elledge v. Todd*, 1 Humph. 43; *Peckham v. Henry*, 6 Sm. & M. 55; *Grinnell v. Phillips*, 1 Mass. 530; *Dorr v. Fenno*, 12 Pick. 521; Whar. Crim. Law, Sec. 3148; *Monroe v. State*, 5 Geor. 85; *Dunn v. Hall*, 8 Blackf. 32; *Richard v. Booth*, 4 Wis. 67; *Crabtree v. State*, 3 Sneed 302.

2. When facts are shown to the court by evidence *aliunde*, giving it cause to believe that such misconduct of the jury has given a wrong direction to its verdict, in a case involving life or liberty, then a juror, so rendering a verdict, becomes a competent witness to explain or enlarge the *aliunde* evidence of such misconduct. *Pratte v. Coffman*, 33 Mo. 78; *Farrar v. State*, 2 Ohio St. 57.

3. When the State shall call for an admission of the accused given in a conversation, the accused will be entitled to put in evidence all he said during the same conversation on the subject of the prosecution. 2nd Russell on Crimes, 868.

4. It is the duty of a court in the trial of a criminal prosecution to give proper instructions defining each crime of which under the indictment the accused can be convicted, and of which there is evidence in the case; and not to do so is error. *State v. Cooper*, 45 Mo. 65; Wag. Stat. p. 1106, Sec. 30. *State v. Sloan*, 47 Mo. 604.

5. The criterion or distinctive feature between the crimes of murder in the second degree and of manslaughter is that in the former the homicidal act is characterized by malice; in the latter not. 1st Wag. Stat. p. 446, Sec. 2, id. ib. Sec. 18, p. 447; 2nd Broom & Hadley's Black. Com. 481, 476; Hale's P. C., Vol. 1, p. 424, p. 466, p. 449; 1st East. P. C. p. 218, Foster C. Law, p. 290; 5 Curby 304; *Dennison v. State*, 13 Ind. 510; *Hoss v. State*, 18 Ind. 349; *Long v. State*, 46 Ind. 582; Selfridge's case, Harr. & Thomp. Self Def., 4 *et seq.*

6. While the law will infer malice from the deliberate use of a deadly weapon upon the person of another, still when it is further shown that such use is under legal provocation given by the party upon whom it is used, such as a vigorous personal assault, then such inference of malice is overcome, and the act is imputed to the hot blood resulting from such provocation; and if death results from the use of such weapon, the crime is manslaughter and not murder. Roscoe Crim Evi., 737 *et seq.*; Wharton Homicide, 2d ed. § 398; 3 Greenleaf Evi., 122 *et seq.*; *Reg. v. Smith*, 8 Carr & P. 160; *State v. Turner*, Wright (Ohio) 20; *Stone v. Town*, ib. 75; 2 Bish. Crim. Law, §§ 797-8-9; *Roberts v. State*, 14 Mo. 138; *State v. Holme*, 54 Mo. 165; *State v. Starr*, 38 Mo. 277.

*Fagg and Biggs* for appellant.

*J. L. Smith*, Attorney General, for the State.

Defendant's statements, made after the warning by Brashear, were no longer answers to Glasscock and were therefore inadmissible.

The instructions given on the part of the State were correct. *State v. Harris*, 59 Mo. 550; *State v. Hays*, 23 Mo. 287; *State v. Underwood*, 57 Mo. 40: 1 Wag. Stat. 446, § 4.

The juror Ewing was not a competent witness to prove how the jury arrived at their verdict. *Woodward v. Leavitt*, 107 Mass. 453; 25 Cal. 398; *McFarland v. Bellows*, 49 Mo. 311; 3 Grah. and Wat. New Trials, pp. 1428 *et seq.*

Defendant does not contend that the verdict of guilty was reached by the jury through any previous agreement, but only that the term of punishment was thus fixed. The conviction was therefore good. Kelley's Crim. Law, § 395 p. 208; *Dana v. Tucker*, 4 Johns. 487. Even if there was misconduct on the part of a jury in assessing the punishment, this will not vitiate the entire verdict but only that part assessing the punishment, and the verdict will then stand as a verdict of guilty only and the provisions

of section five, page 1108, Wagner's Statutes, will govern further proceedings thereon, and the record showing that the court proceeded to sentence the defendant for a term different from that fixed by the jury as provided by that section, the judgment should stand.

HENRY, J.—At the January term, 1877, of the Audrain Circuit Court, the defendant was indicted for murder in the first degree, charged with killing Jefferson D. Lowry. At an adjourned term of said court, held in February, 1877, the defendant was tried, convicted of murder in the second degree, and his punishment assessed by the jury at imprisonment in the penitentiary for a term of eighty-three years, but the court commuted it to sixty years and sentenced him for that term. From this judgment of the Circuit Court he has appealed to this court. The grounds upon which it is urged that the judgment should be reversed are, that the court did not instruct the jury in regard to manslaughter, but confined its instructions to murder in the first and second degree and excusable homicide; that the court refused to permit Glasscock, a witness for the State, after he had testified to a part, to detail all of a conversation he had with defendant in relation to the killing of Lowry; that the jury were guilty of misconduct, in first agreeing that each should set down on a slip of paper the term for which he thought defendant should be confined in the penitentiary, and then divide the aggregate of these figures by twelve and make the quotient their verdict; that this agreement was carried out, and the result was the verdict returned into court. On a motion for a new trial the defense offered to prove this by a member of the jury, but the court refused to permit the juror to testify. The evidence tended to prove the following facts: On the day that the homicide occurred, the defendant and the deceased, with others, were at a saloon in the town of Vandalia, when defendant and one Hampton quarreled over a game of cards, each claiming the game,

and in the course of the controversy, defendant boastfully remarked that he "was the best man in Vandalia." Deceased then pulled off his overcoat and approached defendant, who said: "Why, Jeff, I did not know you were here," and soon after left the saloon, and in company with his brother and another person went to Fry's store. Deceased soon after followed, accompanied by several persons. He approached Fry's store, but the door was closed and locked. It seems that deceased remained in front of Fry's store a little while, and then went off a short distance, when the door was unlocked and defendant again went out, and deceased approached him, laid his hand on him, or took him by the collar, and said to defendant, "You drew a pistol on me." Defendant said, "No, I didn't." Lowry said, "Yes, you did." By this time defendant was against the wall of the building, deceased still having his hand on him, and as he, the second time, denied having drawn a pistol on deceased, discharged his pistol with fatal effect. Two witnesses for the State thought he did not take the pistol out but fired it from his pocket, but another witness for the State testified that he drew his pistol, that he saw the pistol and the flash, but all agree that it was not elevated above the pocket in which it was carried. The ball entered the stomach of the deceased, who lingered a few days and died. There was no evidence of any previous difficulty between the parties or of any unfriendly feeling on the part of defendant toward the deceased. They had both been drinking, and defendant after he left the dram-shop was boisterous, and spoke of Sam Harris, Lawson Henry, Myers and others, who, he said, had been imposing upon him long enough, and "he'd be d——d if he didn't intend to sell out," but in none of his conversations in that connection did he mention the name of deceased.

The court instructed the jury as to what constitutes murder in the first and second degree and excusable homi-

1. PRACTICE, CRIMINAL: instructions. cide, but did not give, nor did defendant's

counsel ask, any instructions in regard to manslaughter in any degree, but the counsel now contends that it was the duty of the court to instruct the jury as to manslaughter, because under the indictment and evidence they might with propriety have found defendant guilty of manslaughter in the second or fourth degree, if they found him guilty of any crime at all. We are satisfied from the evidence, that an instruction declaring what constitutes manslaughter in the fourth degree, would have been proper. In *The State v. Starr*, 38 Mo. 277, the court held that "where there is a lawful provocation, the law, out of indulgence to human frailty, will reduce the crime of killing from that of murder to manslaughter, but neither words of reproach, how grievous soever, nor indecent, provoking actions or gestures, however much calculated to excite indignation or arouse the passions, are sufficient to free the party from the guilt of murder. To have the effect to reduce the guilt of killing to the lower grade, the provocation must consist of personal violence. There must be an assault upon the person, as where the provocation was by pulling the nose, purposely jostling the slayer aside in the highway, or other direct and actual battery." See Greenleaf on Evidence, vol. 2, sec. 122. " The killing has been held to be only manslaughter, though a deadly weapon was used, where the provocation was by pulling the nose, purposely jostling the slayer aside in the highway, or other actual battery." This doctrine is too well settled for controversy, but as no instructions were asked by defendant in relation to the crime of manslaughter, was it incumbent on the court, of its own motion, to give instructions in relation to these crimes, of either of which the defendant might have been found guilty on the evidence? This court seems to have so held in several cases, and recently in the *State v. Ware*, 62 Mo. 597; *State v. Jones*, 61 Mo. 232. In most, if not all of the cases, except that of *State v. Ware*, counsel for defense had asked, and the court refused, instructions which, if unobjectionable in

their phraseology, should have been given, and it was held that the court should not, therefore, have neglected to give such as the law of the case required. In the *State v. Ware*, it does not appear that any were asked, and the court, citing the case of *State v. Mathews*, 20 Mo. 50, observes that, " aside from this being binding authority, we think it sustained by good reason. Juries should not be allowed to guess at the law in such cases." It seems to be the 2. INSTRUCTIONS: murder: man-slaughter: excusable homicide settled law of this State that the court, *in criminal cases*, commits error if it fails to declare the law to the jury applicable to the case made by the evidence, whether proper instructions or any are asked by the defendant or not; and it was especially the duty of the court in the case at bar. The court of its own motion gave several instructions, defining murder in both degrees, and we think it should have defined all of the crimes to which the evidence was applicable. The court must have been prompted to give instructions, on its own motion, by a conviction that those already given were insufficient, and when, dissatisfied with those given, the court undertook to instruct the jury, it should have declared the whole law applicable to the case made by the evidence.

On the trial the State introduced H. Glasscock, the sheriff, who testified as follows : Defendant came into my CRIMINAL LAW: evidence. custody about five minutes after the shooting. I asked him why he had shot Lowry. He said he did not know why he had done it; and defendant continued to talk about the matter, when Esq. Brashears told him not to talk so much, or not talk about the matter. I then took defendant to Esq. Brashears's house. He continued to talk all the way down there. We ate supper together, and after an hour or so, defendant and I went to bed. *Defendant was talking about the matter all the time, from the time I asked him why he had shot Lowry, until we went to bed.* On cross-examination, he said : " This conversation between defendant and myself, he doing the most of the talking, *was continued with but little interruption from*

*the time I asked him why he shot Lowry, until we went to bed.
After Brashears told him not to talk, the defendant continued
the conversation about the shooting as we went along the street to
Brashears's house."* The defence asked what else defendant
said about the shooting of Lowry, but the court sustained
an objection to the witness testifying to any of the conver-
sation, except that which passed before Brashears told de-
fendant not to talk about the matter, and in this, we think,
that the court erred. Although Brashears told him not to
talk about the matter, he did not cease to talk in answer
to the sheriff's question, and the State had no right to call
for a portion of his statement, and have that excluded
which followed Brashears's warning. If he had ceased to
talk when Brashears told him to do so, and thus broke off
an explanation of the killing he was making to the sheriff,
it was error to admit that fragment of the conversation
which preceded the interruption by Brashears. If on the
contrary, he did not heed the interruption, but continued
the conversation, the defense was entitled to all he said in
answer to the sheriff's enquiry; so that error was commit-
ted in either view of the question. Russell on Crimes, Vol.
2, 868; Greenleaf on Evi., Vol. 1, § 218.

The finding of a verdict by a jury, as here alleged, is
such misconduct as will invalidate it. This has been held

4. JURY: verdict:
misconduct.

whenever the question has been considered
by a court of last resort, with perhaps one
or two exceptions; but there is almost an equal unanimity

5. MISCONDUCT:
witness; juror.

of opinion, that the jurors will not be admit-
ted to prove such misconduct. In *Grinnell
v. Phillips*, 1 Mass. 541, a contrary doctrine was held, and
in *Pratte v. Coffman*, 33 Mo. 72, it was intimated that cases
might arise involving life and liberty, in which the rule
might be departed from, but the case in 1st Mass. has been
overruled by a series of later decisions in that State; and
in this State, the cases of *Sawyer v. The H. and St. Jo. R. R.
Co.*, 37 Mo. 263; *State v. Coupenhaver*, 39 Mo. 39, and *State
v. Underwood*, 57 Mo. 40, have terminated the controversy,

and it can no longer be considered an open question. Judgment reversed and cause remanded. All concur.

REVERSED.