THE STATE v. ELLIOTT, *Plaintiff in Error.*

1. **Criminal Law**: INDICTMENT: INDORSEMENT BY FOREMAN OF THE GRAND JURY. It is no objection to the validity of an indictment that the certificate, "a true bill," etc., required by Revised Statutes, 1879, section 1795 to be indorsed upon it by the foreman of the grand jury, was written in blank by the prosecuting attorney and afterward signed by the foreman.

2.    ———: HOMICIDE: MANSLAUGHTER IN THIRD DEGREE. Where the difficulty resulting in a homicide arose suddenly, without previous threats or grudge on the part of the accused against the deceased, and there is evidence tending to show that the killing was done with a dangerous weapon in a heat of passion suddenly aroused by an adequate cause, and that there was no design on the part of the accused to kill the deceased, an instruction on manslaughter in the third degree, under Revised Statutes, 1879, section 1244, should be given.

3.    ———: ———: ———: PROVOCATION. Words alone, however provoking or insulting, will not furnish an adequate cause for passion which will reduce the killing to manslaughter, but abusive and insulting language of the deceased may be given in evidence as tending to explain his acts; and words, added to acts of violence which would alone be insufficient, may justify the killing of the aggressor or reduce it to manslaughter.

4.    ———: PROVOCATION: SELF-DEFENSE. A person assaulted may return a blow, without being justified in taking the life of his assailant. The blow returned must be proportioned to the threatened danger.

5.    ———: MANSLAUGHTER IN FOURTH DEGREE. A killing done in a heat of passion, without a design to effect death and not with a dangerous weapon and which is not justifiable, is manslaughter in the fourth degree, under Revised Statutes, 1879, section 1249.

6.    ———: PRACTICE: REASONABLE DOUBT. Where full instructions are given upon the subject of reasonable doubt, upon the whole case, it is not necessary to tack a clause upon reasonable doubt to each instruction.

7.    ———: PRESUMPTION: MURDER. The law presumes, in the absence of evidence to the contrary, that an intentional killing with a deadly weapon is murder in the second degree, and it devolves upon the defendant to adduce evidence to repel that presumption, unless it is repelled by evidence introduced on the part of the state.

*Appeal from Moniteau Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*Edmund Burke* for plaintiff in error.

(1) The court committed error in refusing to quash the indictment for failure of foreman of grand jury to

endorse on said indictment the words, "a true bill," and for failure to endorse on said indictment, after his name, the word "foreman." Statutes of 1879, secs. 1795, 1798; *State v. Bruce*, 77 Mo. 193; *State v. Burgess*, 24 Mo. 381; *State v. Murphy*, 47 Mo. 274. (2) The court should have submitted to the jury, under the evidence in the cause, an appropriate instruction in reference to manslaughter in the second degree, under sections 1242 and 1243, as well as for manslaughter in the third degree, under section 1244, as well as for manslaughter in the fourth degree under section 1249, of Revised Statutes of 1879. *State v. Stonium*, 62 Mo. 596; *State v. Sutton*, 64 Mo. 111; *State v. Branstetter*, 65 Mo. 149; *State v. Gassert*, 65 Mo. 352; *Porter v. Harrison*, 52 Mo. 524. (3) The court committed error in giving the fifth instruction asked by the state. It ignores the question of reasonable doubt and directs the jury that if they believe and find from the evidence certain facts they should find the defendant guilty of murder in the second degree. *State v. Hickam*, 95 Mo. 322. The fifth instruction is objectionable for the further reason that it enunciates the proposition that it devolves upon the defendant to adduce evidence to meet or repel the presumption that the alleged killing was murder in the second degree, unless such presumption is repelled by evidence introduced on the part of the state. It shifts the burden of proof from the state to the defendant, and leaves it entirely to the discretion of the jury as to the evidence necessary to repel such presumption unless the same is repelled by evidence introduced on the part of the state. *State v. Hickam*, 95 Mo. 329; *Nichols v. Winfrey*, 79 Mo. 544; *State v. Wingo*, 66 Mo. 181.

*John M. Wood*, Attorney General, for the State.

(1) The objection to the indictment as shown by the motion to quash and the evidence offered in support of it was that the words "a true bill" and "foreman,"

were not written on the indictment by the foreman. It is immaterial who makes that indorsement; the law only requires the foreman of the grand jury to certify to the indictment in that form. Revised Statutes, sec. 1795; *State v. Hagan,* 31 Mo. 342. The indictment is otherwise sufficient. *State v. Blan,* 69 Mo. 317; *State v. Snell,* 78 Mo. 240. (2) Under the evidence, the killing was either murder in the first or second degree or done in self-defense, and the court committed no error in requiring the jury to find the defendant guilty of either murder in the first or second degree or to acquit him on the ground of self defense. If the killing was committed under the circumstances shown by the state's witnesses it was murder; if, as testified to by defendants, it was done in self-defense. *State v. Sneed,* 91 Mo. 552; *State v. Wilson,* 88 Mo. 13; *State v. Starr,* 38 Mo. 272; *State v. Anderson,* 86 Mo. 309; *Ib.,* 89 Mo. 312; *State v. Snell,* 78 Mo. 240; *State v. Hardy,* 95 Mo. 455. (3) It has been repeatedly held by this court that the law presumes murder in the second degree from the simple act of killing, and instruction number 6 correctly declared the law. *State v. Landgraf,* 95 Mo. 104; *State v. Tabor,* 95 Mo. 591; *State v. Wisdom,* 84 Mo. 177; *State v. Thomas,* 78 Mo. 327; *State v. Gassert,* 65 Mo. 352.

BLACK, J.—The defendant was convicted of murder in the second degree and sentenced to imprisonment for thirty years, for killing Rudolf Niederhauser on the fifth of July, 1887.

A reversal is asked because the court overruled a motion to quash the indictment. On the back of the indictment appear these words, "a true bill," which are erased by a stroke of the pen, and then follows this certificate: "A true bill. J. V. Johnson, foreman of the grand jury." It appears the prosecuting attorney made this endorsement, except the signature of the foreman, who signed his name in a blank left for that purpose

before the indictment was returned into court. The point of the objection seems to be, that the whole endorsement should have been written by the foreman. The statute (sec. 1795) upon which reliance is placed for the contention makes no such requirement. It simply provides that the foreman shall "certify under his hand, that such indictment is a true bill," giving the form of the certificate. When the foreman of the grand jury signed the blank endorsement, he thereby made the whole of the certificate his own act by adoption, and it matters not who wrote the body of the certificate. *State v. Bruce*, 77 Mo. 193, is not in conflict with the conclusion just stated; for in that case the prosecuting attorney had failed to sign the indictment, and the effect of that failure was the only question before the court.

The evidence shows that deceased was on the streets of California; that he had been drinking and was disposed to use insulting language with those with whom he conversed. He and the defendant then met for the first time. He wanted to trade horses, and they went to defendant's stable, which fronted on an alley, to look at defendant's mule. The animal was not in the stable, but in use by defendant's son, and they went to see it, and some offers for a trade were made. They returned, and when close to the alley the deceased got into an altercation with another person, used some offensive language and this person told him he had better go home. The defendant went to his stable, the deceased following him, whether by invitation of defendant or of his own accord is in dispute.

The witnesses for the state testified that in a few minutes thereafter they heard defendant order the deceased to leave; that the deceased was then sitting on his horse in the alley near the stable; that deceased said something but they could not hear what it was; that defendant then picked up a club and struck him over

the back and head twice, knocking him off his horse; that as he raised up defendant hit him a third blow on the head and then kicked him. The blows on the head proved fatal.

The evidence of the defendant, his son and wife, is that deceased came up to the stable and in some conversation about the mules, then in the stable, called defendant a liar; that defendant's wife came out to milk the cows and told her son to drive the cows in the stable; that deceased said to her: "What have you got to do with it, you damned bitch;" that defendant then ordered him to leave and he started to go out of the alley, but turned around on his horse with a knife in hand saying "I will cut your damned throat;" that defendant picked up a stick and struck at, but did not hit, deceased, who slipped off on the opposite side of the horse, came around to defendant who struck him with the stick, took the knife away from him and then gave him a kick.

On cross-examination defendant testified: "Deceased came on me three times, holding the blade of the knife down, and I knocked him down the third time he came at me. I was trying to keep him off. I was not trying to kill him. I was hot."

The defendant produced in court a stick, being a piece of pine board which he and his witnesses say is the stick used by him, and a knife which they say is the knife taken from the deceased. The state produced in court a club, a much larger and heavier weapon, which they identify as the club used by the defendant. The state offered some evidence to the effect that deceased had no knife. And several physicians give it as their opinion that the stick produced by the defendant would not inflict such a wound as that received by the deceased.

The court by the first instruction for the state told the jury in express terms, that they must find the

defendant guilty of murder in one of the degrees, or acquit on the ground of self-defense, thus excluding from their consideration any lower degree of offense. And of this ruling error is assigned. So far as the evidence for the state is concerned, it tends to show a case of murder only. The evidence for the defendant tends to show a case of homicide in self-defense ; but the question is, whether it also tends to show a lower degree of homicide, should justifiable homicide not be made out to the satisfaction of the jury.

Section 1244 of Revised Statutes provides : " The killing of another in a heat of passion, without a design to effect death, by a dangerous weapon, in any case, except such wherein the killing of another is justifiable or excusable homicide, shall be deemed manslaughter in the third degree."

There had been no previous difficulty between these parties. The affair in question arose upon a sudden, without previous threats on the part of the defendant. All the evidence goes to show that he bore no previous grudge against the deceased ; so that the circumstances are not inconsistent with the testimony of the defendant that he had no purpose or intention to kill deceased. There is, therefore, abundant evidence tending to show that the killing was without a design to effect death. It is also clear that the evidence tends to show the defendant acted from a passion, suddenly aroused ; but the passion to be of any avail to him must have arisen from an adequate cause ; and the question whether instructions should have been given upon manslaughter must turn upon the further question whether there is any evidence of such a cause or provocation.

The principle of law is too well established to admit of question that words alone, however provoking or insulting, will not reduce the killing to manslaughter. They alone do not furnish an adequate cause for the passion. *State v. Branstetter*, 65 Mo. 153. The abusive

or insulting language of the deceased may, however, be given in evidence, for it tends to give character to and explain the act of the deceased. "Hence," says Bishop, "if there is a present demonstration of impending violence, which alone would be insufficient, accompanying words, added to physical acts, may create such peril as will justify the killing of the aggressor, or reduce it to manslaughter." 2 Bish. Crim. Law (6 Ed.) sec. 704.

The jurors may have believed that when or shortly after, the deceased had been ordered to leave, he drew his knife and made threats or demonstrations of a design to cut the deceased. If such be the fact, then there was a sufficient provocation for the heat of passion. There might be such provocation, and still justifiable homicide not be made out; for it does not follow that because a man may return a blow, he may take the life of his assailant. The blow returned must be proportioned to the threatened danger. The jurors may have believed that, though deceased did threaten the defendant with a knife there was no necessity for taking his life. They were not bound to accept or reject, as a whole, the evidence offered by defendant. They could accept as true a part and reject as false a part, as they were convinced it was true or false. It may be, as contended by the state, that the defendant's evidence is all a sheer fabrication, but that was a question for the jury and not for this or the trial court to determine. We can but conclude there was evidence upon which the court should have instructed upon manslaughter in the third degree under the before quoted section. If the killing was not justifiable and was done in a heat of passion without a design to effect death and not with a dangerous weapon, then it must be manslaughter in the fourth degree under section 1249.

We think instructions should have been given upon both of these degrees of manslaughter, and that it was error to exclude these degrees of the offense from

the consideration of the jury, as was done by the first instruction.

The fifth instruction for the state is as follows: "If you believe and find from the evidence in this cause, that defendant at the county of Moniteau, and state of Missouri, on or about the fifth day of July, 1887, wilfully, premeditatedly and with malice aforethought, but without a deliberation, struck with a club or stick of wood, and by striking, mortally wounded Rudolf Niederhauser and that the said Niederhauser died at said Moniteau county, of said mortal wound within a year after said striking, then you should find defendant guilty of murder in the second degree; and if you further believe and find from the evidence in this cause that defendant intentionally struck and mortally wounded deceased, with a club or stick of wood, and that such club or stick of wood was a deadly weapon, then the law presumes that the killing was murder in the second degree, in the absence of proof to the contrary, and it devolves upon defendant to adduce evidence to meet or repel that presumption unless the same is repelled by evidence introduced on the part of the state."

The objections to this instruction are that it ignores the question of reasonable doubt, and shifts the burden of proof upon the defendant. Full instructions were given upon reasonable doubt, upon the whole case, and it was not necessary to tack a reasonable doubt clause to each instruction. The other objection is met by what was said in *State v. Alexander*, 66 Mo. 148.

The case is loaded down with instructions given on the one side and the other, and we think the third and sixth for the state should be omitted, since the fifth is sufficient upon the subject of presumptions in a case circumstanced as this one is.

The judgment is reversed and the cause remanded for new trial. SHERWOOD, J., absent; the other judges concur.