STATE OF MISSOURI, Respondent v. THOMAS SMITH AND JOSEPH SMITH, Appellants.

St. Louis Court of Appeals, May 21, 1889.

Criminal Law: PLEA OF SELF-DEFENSE.   When an assault is not due to premeditation or deliberation, but is the result of a sudden quarrel, and the aggressor is prosecuted, under Revised Statutes, section 1262, for a felonious assault with intent to kill, he is entitled to interpose acts done in self-defense, not as a complete defense to the prosecution, but to reduce the grade of the offense and in mitigation of the punishment.

*Appeal from the Newton County Circuit Court.*— HON. M. G. McGREGOR, Judge.

REVERSED AND REMANDED.

*Joseph Cravens*, for the appellants.

(1)   If the defendants had been convicted of the offense charged in the indictment, the punishment would have been "by imprisonment in the penitentiary not exceeding ten years," R. S., sec. 1262.   While in the case of the *State v. Grimes*, 29 Mo. App. 470, and other recent cases decided by this court, it has been held that a defendant may be convicted of common or less degree of assault than the one charged ; yet when the defendant is convicted of a less degree than the one charged, the verdict must specify the degree of which they find

defendant guilty. R. S., sec. 1927. It is true this punishment might have been imposed by the jury under either section 1263 or 1265, but the verdict does not specify the degree of which they convict, whether of an "assault to kill," or "common assault." (2) The court erred in giving instruction number 2, as it does not specify the punishment as fixed by the statute. Sec. 1263. (3) The instruction asked by defendant should have been given. On the evidence, the defendants were entitled to have the question of self-defense submitted to the jury under proper instructions. *State v. Alley*, 68 Mo. 144; *State v. Foley*, 12 Mo. App. 431; *State v. Sneed*, 91 Mo. 522, 559.

BIGGS, J., delivered the opinion of the court.

The defendants were jointly indicted under Revised Statutes, section 1262, for a felonious assault with intent to kill one Edward Love. They were tried, and convicted of an assault, and the jury assessed the punishment of each at a fine of one hundred dollars, and imprisonment in the county jail for a term of three months.

Whether the defendants were convicted for an assault with an intent to kill under Revised Statutes, section 1263, or of a common assault, under Revised Statutes, section 1265, cannot be determined, because the jury failed in their verdict to state the kind of assault, of which they found defendants guilty. Neither can this be determined from the punishment assessed, because the punishment inflicted was authorized by either section. The defendants urge this defect in the verdict as one ground for a reversal of the judgment.

The principal cause of complaint made by defendants in this court, and which goes to the merits of the defense, arises on the instructions of the court as to the law of self-defense. For the state, the court declared the law as follows:

"He, who seeks a difficulty or voluntarily commences or enters into a difficulty, cannot afterwards set up that he was acting in necessary self-defense, and in this case *there is no evidence to show that either defendant was acting in his own necessary self-defense*, and if from the evidence you believe that either defendant committed an assault as set forth in either of the first three instructions, you should convict such defendant of the grade of assault of which the evidence shows him guilty, " etc.

Defendant asked the following instructions, which the court refused to give, to-wit:

"The court instructs the jury that, although they may believe, from the evidence, that defendants, or either of them, threw and struck Love with a stone, yet if the jury believe, from the evidence, that said Love was, at the time, about to draw a pistol or other deadly weapon, or that defendant, Joseph Smith, had a reasonable cause to apprehend a design on the part of Love to do him some great personal injury, and that said defendant had reasonable cause to believe that said Love was about to carry such design into execution, then said defendant had a right to act upon appearances and to use all necessary means and force to protect and defend himself."

The court evidently concluded that the evidence showed conclusively that the defendants were the aggressors, and had sought and provoked the difficulty, and for this reason the plea of self-defense would not avail defendants. If there was any substantial evidence to the contrary, then the judgment cannot stand. The proper solution of this question involves an examination of the evidence for the defense.

Suffice it to say that the evidence for the state tended to show that the defendant, Joseph Smith, without any provocation, committed an assault on Love by striking him with stones, and that his co-defendant,

Thomas Smith, was present, aiding, abetting and encouraging him in making the assault ; that the fight began by Joseph Smith throwing a stone at Love and striking him on the hip, without doing any particular harm; that the parties then had a "fist-fight" resulting in the defeat of Love, but with little damage to either one of the combatants.

The defendants are the brothers of Love's wife, and, according to the testimony of the two defendants, the difficulty occurred in the following way : All the parties had been to Indian Springs to attend a Fourth of July celebration. Love and the defendants live north of Indian Springs, and in returning home they traveled the same road. There had been no previous difficulty or bad feelings between Love and the defendants, or between the latter and Mrs. Love, their sister. Love and the defendants met during the day at Indian Springs and spoke to each other as usual. The defendants rode home in a wagon with Robert Greene and family, and when they arrived near the house of Joseph Smith, they both got out of the wagon and started along a path leading up to Joseph's house, which was distant about one hundred yards. The prosecuting witness, his wife, daughter and son had stopped their vehicle near the path leading up to the house, for the purpose of procuring water to drink from a spring near by. The defendants spoke to their sister, and she refused to speak to or notice them.

Thomas Smith, in his testimony as to the beginning of the difficulty, said : "Me and my brother spoke to my sister and she wouldn't speak to us, and we asked her what was her reason she would not speak, and she didn't say anything at the time. We told her if we had done anything wrong we were ready to ask forgiveness and she *started* to *tell* us, when Ed. Love raised up and says : "I don't know as you and Joe has ever mistreated me, but the 'old man' (meaning defendants' father) has." Then my brother called him

a liar. Then Ed. Love run his *hand* in his *left-side pocket* and his right *hand in his hip pocket*, and says, ' don't you lay your hands on me. ' Then my brother stepped back and gathered up a couple of ' rocks ' and threw at him. The first one missed him and the next one hit him on the left hip." " Q. Where was Ed. Love when he said to you that he didn't have anything against you, but the old man ? A. He was standing in the wagon, then he stepped *out* of the *wagon* with one foot on the hub."

Joseph Smith, in speaking of the origin of the difficulty, said : " We ( meaning himself and brother ) got out of wagon and went up the path. * * * I spoke to my sister ( Mrs. Love ), and she would not speak to me." " Q. What did you say to her ? A. I said good evening Lily or ' Day.' The most of the folks called her Lily. I think I said good evening 'Day,' and she wouldn't look towards us. I went up to wagon and says, what reason have you got for not speaking to me ? Says I, if I have done anything to hurt your feelings, I says, I am willing to make acknowledgments. I says, I want to live peaceably and friendly with everybody, and if I have done anything I want to ask pardon. But she wouldn't say anything. Directly Ed. Love, who was standing on left hand side of wagon; I don't know exactly, but I think he had one foot in the wagon and one on the hub of the wheel, and he just remarked, ' Well I don't know that you ( Joe and Tom ) has ever done anything,' but he says ' your father has.' I says to him, you are a lying son of a bitch. Then he jumped up in the wagon and run one hand in his hip pocket and one in his side pocket like he was going to shoot, and I just grabbed up a couple of ' rocks ' and ' throwed.' The first one missed him and the second one hit him on the left side. * * * He made a motion as though he was going to shoot, and he said for me not to hit him, or something that way. I thought he was

going to shoot me, and I just gathered the 'rocks' and 'throwed' them as quick as I could."

The courts have had a great deal to say about the doctrine of self-defense, and it is the well-settled rule that where the defendant was the aggressor and sought and "brought on the difficulty," he cannot invoke the law of self-defense, even though he is forced to kill his adversary to protect his own life. But this is applied to its fullest extent *only*, when the attack was evidently premeditated and made after mature deliberation. If the assault was the result of a sudden quarrel, then the rule is somewhat relaxed and the circumstances may be shown to reduce the grade of the offense.

But we think that the better practice, in all cases, requires that the question as to who was the aggressor, and whether the defendant sought or induced the difficulty, ought to be left, under proper instructions, to the jury, unless the evidence is such that there cannot reasonably be but one answer to the question.

There is no evidence in the record that the defendants and Love had been unfriendly, or that there was any cause for ill will between them; nor does the evidence show any such feeling to have existed between the defendants and their sister. We are, therefore, warranted in assuming that the difficulty, so far as defendants were concerned, was unexpected and not the result of deliberation.

The defendants spoke to Mrs. Love and she refused to either speak to or notice them. She was their sister, and it was quite natural that they should inquire for the cause; and they both told her that, if they had given her just cause for offense, they were ready to make the necessary amends.

Thomas Smith says, that Mrs. Love was about to explain to her brother the cause of the trouble, when her husband interposed and made a statement which caused Joseph Smith to call him a "liar." Can it be said as a matter of law that the defendants under such

circumstances were the aggressors, and "brought on the difficulty," or was this testimony sufficient to carry the question to the jury?

The testimony of the defendants themselves, as it is preserved in this record, shows no justification for the harsh epithet applied by Joseph Smith to Love. The remark made by Love that the father of defendant had mistreated him (standing by itself) is apparently inoffensive. There is nothing to indicate that the remark was made in an angry or offensive manner, or that the prior relations between Love and defendants' father had been such as to make the remark necessarily offensive to defendants. This being true, we would not be warranted in saying that there was any evidence in the case that the defendants were not the aggressors and did not bring on the difficulty, within the meaning of the law.

But as before indicated, the testimony of the defendants tended to prove that the assault was the result of a sudden quarrel and was brought on without any deliberation or premeditation on their part, and it also shows that the throwing of the stones was induced by fear on the part of Joseph Smith that Love intended and was about to shoot him. While we do not think that the action of Love, in threatening to draw a pistol, could have been interposed as a *complete* defense to this prosecution, for the reason that defendants provoked the difficulty, yet the defendants were charged with an assault, and with a felonious purpose to kill Love. Under this indictment the defendants could have been convicted of a premeditated and felonious assault with intent to kill under section 1262, or of an assault with intent to kill without malice under section 1263, or of a common assault under section 1265. The intent with which the defendants made the assault on Love was a very material inquiry, and the facts and circumstances tending to establish this should have been submitted to the jury, not only for the purpose of determining the

grade of the offense, but in mitigation of the punishment to be inflicted.

Hence we think the defendants were entitled to have the jury consider the threatening attitude assumed by Love, which caused Joseph Smith to throw the stone, not by way of a perfect defense to the prosecution, but for the purpose of mitigating the offense and the punishment to be inflicted, and as having a tendency to show that the assault was not made deliberately or with the intention or design on the part of Joseph Smith to kill Love. *State v. Partlow*, 90 Mo. 608.

The consideration of this matter was taken away from the jury by the instructions for the state, and we cannot say that this error was not prejudicial to defendants. The verdict of the jury fails to state the offense of which the defendants were convicted, and, for aught that appears, the defendants were convicted of an assault with intent to kill under section 1263. If the views indicated by us had been submitted to the jury under proper instructions the result might have been different, not only as to the grade of the offense, but the punishment.

The instruction asked by defendants was properly refused, as it assumed that under the facts the defendants had a right to interpose the conduct and threatening acts of Love as a *perfect* defense to the prosecution and a justification of the assault.

But while the court did right in refusing this instruction, yet it was its duty to give such an instruction in lieu of the one asked and refused, as the law and the facts of the case justified. *State v. Matthews*, 20 Mo. 55; *State v. Stonum*, 62 Mo. 596; *State v. Branstetter*, 65 Mo. 155.

It will not be necessary to notice other errors complained of, as they are not likely to occur on another trial.

The judgment will be reversed and the cause remanded. All the judges concur.