## THE STATE v. JESSE HANSON, Appellant.

**Division Two, November 29, 1910.**

1. **INFORMATION: Felonious Wounding.** An information charging that defendant, "with a deadly weapon . . . did then and there feloniously, willfully, on purpose and of his malice aforethought, forcibly strike and beat," etc., charges that the wounding was feloniously done.

2. **EVIDENCE: Res Gestae: Other Difficulties.** Testimony as to what parties to other and independent difficulties occurring on the same night said and did, and as to what witnesses who were present said and did about those difficulties, is not a part of the *res gestae* and should be excluded.

3. **MANSLAUGHTER IN THIRD DEGREE: Design to Effect Death.** Under the statute declaring that "the killing of another in a heat of passion, without a design to effect death, by a dangerous weapon, in any case except where the killing is justifiable or excusable, shall be deemed manslaughter in the third degree," no instruction should be given for manslaughter in the third degree where the killing was intentional and the act of defendant can only be ascribed to a design to effect death; but if in a heat of passion he struck the deceased with a dangerous weapon under such circumstances that a jury might well say he did not design to effect death by the blow, then such instruction is proper.

4. ———: ———: **Facts of Case.** There had been no previous grudge between defendant and deceased. They and others had attended religious services at a schoolhouse, and after the services they went into the yard, and one of them kicked a club, and defendant remarked that the club was deceased's, who at once called defendant a liar, to which defendant replied, "Don't

State v. Hanson.

call me a liar." Thereupon deceased advanced in a hostile manner and was warned by defendant to stand back or he would hit him with a stick he had picked up after the altercation began. Deceased continued to advance, with his right hand in the bib of his overalls, and thereupon defendant struck him upon the head with the club, and as deceased fell a revolver fell out of his hand. *Held*, that there was ample evidence of heat of passion, without a design to effect death, to submit the question of manslaughter in the third degree under Sec. 4462, R. S. 1909.

5. ———: **Heat of Passion.** Words alone, however provoking or insulting, do not furnish an adequate cause for passion. But the abusive or insulting language may be given in evidence as tending to explain and give character to the act of deceased, such as a demonstration of intended violence. And in this case the calling of the defendant a liar was properly admitted as bearing on the issue of whether defendant struck deceased in a heat of passion.

6. **PRIOR OPINIONS:** Explained by Facts and Context. All adjudications are to be considered only in connection with, and as explained by and limited to, the essential circumstances constituting the case or that portion of the case on which the decision rests.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Frank H. Farris* and *Harry Clymer* for appellant

(1) The information in this case is insufficient to support the judgment, and it is fatally defective in that it fails to charge the wounding was done feloniously. The homicidal act itself must be charged to have been done feloniously, and this information does not meet that requirement of the law. State v. Green, 111 Mo. 585; State v. Williams, 184 Mo. 261; State v. Johnson, 191 Mo. 177; State v. Woodward, 191 Mo. 617. (2) The court erred in excluding parts of the testimony of George Chandler, Ellis Huitt, and Ike McGeethin, for the reason that the same was a part of the *res gestae.* All of the circumstances and inci-

dents of the fatal act, or difficulty, and all of the circumstances leading to or forming the basis of the action of the defendant or deceased, are said to be of the *res gestae*. Acts and statements of parties to a homicide from the beginning to the conclusion of the fatal difficulty form part of the *res gestae*, and are admissible as such. This rule covers the acts and declarations of others than the accused and deceased, who participate in the difficulty. Acts and statements of third persons present at the homicide which form part of the transaction are competent as part of the *res gestae*. Circumstances immediately before or preceding the homicide, which form part of the transaction, and circumstances immediately following the homicide, and forming a continuation of the transaction are admissible as a part of the *res gestae*. 11 Ency. Ev., pp. 404, 405 and 506; 6 Ency. Ev., pp. 610, 611 and 612; State v. Woodward, 191 Mo. 633; State v. Cavin, 199 Mo. 158; State v. Vaughan, 200 Mo. 17; State v. Baker, 209 Mo. 450. (3) The court erred in giving an instruction authorizing a verdict for manslaughter in the third degree, as there was no evidence which tended to show that the defendant was guilty of such offense. Under the testimony the defendant was guilty of either murder in the second degree, or manslaughter in the fourth degree, or he should have been acquitted on the ground of self-defense. State v. Watson, 95 Mo. 411; State v. Pettit, 119 Mo. 410; State v. Nocton, 121 Mo. 537; State v. Bowles, 146 Mo. 6; State v. Barutio, 148 Mo. 249; State v. Reed, 154 Mo. 122; State v. Hollingsworth, 156 Mo. 178; State v. Vinso, 171 Mo. 576; State v. McKenzie, 177 Mo. 699; State v. Robertson, 178 Mo. 496; State v. Darling, 199 Mo. 168. This court has repeatedly held that there can be no manslaughter in the third degree where the killing is either willful or intentional. State v. Watson, 95 Mo. 415; State v. Robertson, 178 Mo. 503. There can be no such thing as manslaughter in the third degree under this statute

where the killing is intentional, or done with a deadly weapon in a manner likely to produce death, even though there is no express purpose or intention to kill. State v. Pettit, 119 Mo. 416; State v. Nocton, 121 Mo. 550; State v. Strong, 153 Mo. 555; State v. Vinso, 171 Mo. 591. If the defendant was aroused to a sudden passion by the attack of the deceased, and in the quarrel with deceased, struck the deceased, without malice, and killed him, then it was only manslaughter in the fourth degree. State v. Bowles, 146 Mo. 15. Even an intentional killing done with a deadly weapon in hot blood and without malice, was but manslaughter at common law, and under our statute is manslaughter in the fourth degree. State v. Reed, 154 Mo. 131. There can be no question but that the defendant was entitled to the instruction on the theory of self-defense. If this is true, then the court erred in instructing on manslaughter in the third degree. Self-defense, as defined by the Supreme Court of this state, is an affirmative, positive, intentional act, and it necessarily follows that if this is true, an instruction in relation to manslaughter in the third degree should not be given in conjunction with an instruction relative to self-defense, since the latter embraces every self-protective intention known to the law, even though it embrace the taking of life. State v. Strong, 153 Mo. 555.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) The appellant's first assignment of error in his brief, that the homicidal act was not charged to have been done feloniously, is not well taken. These facts are specifically alleged, and every essential element necessary to constitute the crime of murder in the second degree is charged. State v. Little, 228 Mo. 273; State v. Heath, 221 Mo. 570; State v. Barrington,

198 Mo. 36; State v. Privet, 175 Mo. 223; State v. Kindred, 148 Mo. 270; State v. Richardson, 194 Mo. 329. (2) Gregory and Green had nothing to do with the difficulty between the appellant and the deceased, and there is no evidence offered to show that either the appellant or the deceased was present when these parties came into the house. There is no evidence introduced showing that appellant struck the fatal blows before or after Green and Gregory came into the schoolhouse. Underhill on Criminal Evidence, secs. 95, 118. Whatever Green or Gregory might have said as they came into the house after the row would not tend to prove any issue before the jury, as the appellant admits that he struck deceased a fatal blow. Declarations must be contemporaneous. Underhill on Ev., secs. 96, 119. It is impossible to fix any general rule. Lund v. Inhabitants, 9 Cush. 3643. Gregory and Green were bystanders, or third persons, unconnected with the homicide. Their declarations must possess the character of declarations forming a part of the *res gestae* before they are received, and the statements accompanying and explanatory of the act must be the natural concomitants of the act before admitted. They also must show the means and mode of the killing, and the declarant whose language is offered as evidence must have been more than a mere observer or bystander at the occurrence he describes. It must not only appear that he was present, but that he was an active participant, either by word or act, in the event. There is no pretense that Gregory or Green was a participant in the homicide. Underhill on Ev., sec. 101; Wharton's Crim. Ev. (9 Ed.), secs. 262, 263, 264, 266; 1 Roscoe's Criminal Ev. (8 Ed.), sec. 26; 1 Bishop's Criminal Proced., sec. 1087; Bradshaw v. Commonwealth, 10 Bush (Ky.) 576-578; State v. Moore, 38 La. Ann. 66; Flynn v. State, 43 Ark. 289. Testimony as to what was said and done after the difficulty was over, unless confined to the actual participants, should be excluded.

State v. Long, 209 Mo. 382. (3) Appellant takes the posi-
tion that there was no evidence which tended to show
that he was guilty of manslaughter in the third de-
gree. He says in his brief, that if he was guilty of any-
thing it was murder in the second degree, or man-.
slaughter in the fourth degree, and cites numerous
authorities of this court in support of this contention.
An examination of these authorities goes to the effect
that where the killing is either willful or intentional, it
is not manslaughter in the third degree. This question
must be decided in the light of the evidence, and this
court will search the record in reviewing the action of
the trial court in the giving of instructions on man-
slaughter to ascertain if the trial court was mistaken
in his view of the evidence where the charge is mur-
der, when he found that the killing was susceptible of
being manslaughter in any degree. The charge was
murder in the second degree. The court was authorized
under our criminal procedure to instruct upon that de-
gree of crime, or any inferior degree of manslaughter.
Sec. 4462, R. S. 1909, is one of the sections of our stat-
ute which defines manslaughter in the third degree, and
it was under this section that the court instructed the
jury that the offender must have been in a heat of pas-
sion, without a design to effect death, and use a dan-
gerous weapon, and the killing must not have been
justifiable or excusable. The term "heat of passion"
has been construed by this court in the following cases:
State v. Wieners, 66 Mo. 13; State v. Andrew, 76 Mo.
101; State v. Wilson, 98 Mo. 440; State v. Bulling, 105
Mo. 204; State v. Berkley, 109 Mo. 665. As to whether
or not the appellant committed the crime without a
design to effect death, we must know only from the
evidence. The evidence does not reveal that the de-
ceased was a participant in the row before the fatal
blow, but appellant was a participant in the whole
difficulty. There is some evidence that deceased had
a revolver and that it dropped from his hand when he

was struck. The preponderance of the evidence was that one hand was in the bib of his overalls; the other one was hanging down by his side at the time he was struck. It cannot be said that the appellant had an express purpose or intention to kill the deceased, or that the killing was intentional, and the jury found that the killing was not done in self-defense. Hence the instruction of manslaughter in the third degree was appropriate and proper under the evidence in this case. State v. Luke, 104 Mo. 563; State v. Wilson, 98 Mo. 449. The appellant had the club in his hand at the time the quarrel began. It is not shown that the fight between the appellant and deceased was preconcerted, and that there was not sufficient time for the passion to subside. 3 Greenleaf on Ev., sec. 121; 1 Russell on Crimes (9 Ed.), 783; 1 Wharton's Criminal Law (9 Ed.), sec. 101.

GANTT, P. J.—This prosecution was commenced by filing in the office of the clerk of the circuit court of Crawford county, the following information, omitting caption and oath of prosecuting attorney:

"Now on this day comes Henry W. Smith, prosecuting attorney within and for Crawford county, Missouri, upon his oath of office as said prosecuting attorney and as he is informed and believes and informs the court that Jesse Hanson at and in Crawford county, Missouri, on the 15th day of November, 1908, then and there being, did then and there in and upon one William Arthur Huitt feloniously, willfully, on purpose and of his malice aforethought, make an assault and with a dangerous and deadly weapon, to-wit, a stick of wood of the length of four feet and of the thickness of two and one-half inches, which he, the said Jesse Hanson, then and there held in his hands, the said Jesse Hanson, did then and there feloniously, willfully, on purpose and of his malice aforethought forcibly strike and beat him, the said

William Arthur Huitt, with the stick of wood afore-
said, in and upon the head of him, the said William
Arthur Huitt, crushing, fracturing and breaking the
skull of him, the said William Arthur Huitt, giving
him, the said William Arthur Huitt, with the stick of
wood aforesaid, a mortal wound, of which said mortal
wound he, the said William Arthur Huitt, from the
15th day of November, 1908, until the 17th day of
November, 1908, in the county of Crawford, and State
of Missouri, did languish, and languishing did live,
and on the said 17th day of November, 1908, the said
William Arthur Huitt in said county of Crawford, and
State of Missouri, of said mortal wound aforesaid,
did die.

"And so the said Henry W. Smith, prosecuting
attorney within and for Crawford county, Missouri,
aforesaid, upon his oath of office as said prosecuting
attorney as aforesaid, does say that the said Jesse
Hanson, him the said William Arthur Huitt, in the
manner and by the means aforesaid, feloniously,
willfully, on purpose and of his malice aforethought,
did kill and murder; against the peace and dignity
of the state."

The defendant had previously been given a pre-
liminary examination before a justice of the peace.

At the February term, 1909, the defendant was
duly arraigned. At the June term, 1909, of the
circuit court of Crawford county, the defendant was
put upon his trial before a jury duly impaneled, and
under the evidence and instructions of the court was
convicted of manslaughter in the third degree, and
his punishment assessed at three years' imprisonment
in the penitentiary. From the sentence imposed on
that verdict, he has appealed to this court.

The testimony tended to establish these facts.
The deceased, Arthur Huitt, was an unmarried man
who resided with his father, J. T. Huitt, in Crawford
county, about three miles from Davisville. On Sun-

day, the 15th of November, 1909, the deceased and one Wisdom left his father's home about three or four o'clock in the afternoon and went to Davisville to attend religious services in a schoolhouse in that village. At Davisville they met three other young men, Gregory, Green and Davis, and among them they had a quart of whiskey, of which they all drank. That night they all went into the schoolroom where the services were being held. About the closing of the sermon, the deceased, the defendant and other young men left the room and went out into the yard in the front of the schoolhouse, where the general row ensued, resulting in Davis getting his throat cut and the deceased, William Arthur Huitt, receiving two licks from a round club about four or five feet long and two inches thick, in the hands of the defendant, Hanson.

Various witnesses detailed their knowledge of the difficulty. It was dark in the schoolyard, the only light being that which came through the door from the room, and two or three lanterns. Arthur Wisdom testified that he saw deceased and defendant at church that night; deceased was standing out in front of the door, and defendant and Walter Davis came out in front of deceased; one McGeethen came out and kicked a club lying on the ground, and defendant said "That's Arthur Huitt's," and deceased said, "No, I aint had no club to-night;" and McGeethen went on and kicked another club and said, "Here's another one," and defendant said, "That's Arthur Huitt's," and Arthur said, "You are a liar, I never had any club." Whereupon defendant ran up and said, "Don't you call me a liar," and struck him across the head with a club. Witness did not see deceased doing anything and did not see anything in his hands. The lick knocked Huitt down and some one helped him up. Deceased was about eight or nine feet from defendant just before he was struck, and was about

State v. Hanson.

four and a half feet from him when he was struck. When they helped Huitt up, witness took him home, horseback. When they reached his home, witness helped him off of the horse and laid him on the ground and the parents of deceased helped take him in the house. When they started home, Huitt, the deceased, got on his horse without any help from witness. George Gregory rode behind deceased and Charles Green behind witness.

Ike Cassidy corroborated the testimony of Wisdom, but added that Huitt, the deceased, was advancing slowly toward defendant when defendant struck him the first lick. He was about three feet from him when he hit him. He heard deceased call defendant a liar, and defendant struck him a light lick. Heard defendant say to deceased, "Stand back, stand back." Defendant had nothing in his hands when he first noticed him. He saw Huitt afterwards near the defendant and heard him call defendant a damn liar. Heard someone say, "Damn you, I'll kill you," but did not know who it was.

Mrs. Joseph Peak testified that she heard defendant say after church that he got the brake pole off of a wagon and knocked Huitt down with it and he thought he had killed him. The evidence further disclosed that deceased had a revolver on his person and was wearing a pair of bibbed overalls, and several witnesses testified he had his right hand in the overall pocket when defendant struck him, and he pulled the revolver out of his pocket as he fell from the blow. One witness testified the blow did not knock deceased down but caused him to stagger.

The father of deceased testified that when Wisdom came home with the deceased, he gave the deceased's revolver to his mother. Wisdom contradicted this statement and stated that deceased did not have a pistol to his knowledge that night, and denied he gave one to the mother of deceased. A post-mortem

examination disclosed that Huitt's death was caused by a fracture of the skull and concussion of the brain. There was much testimony to the effect that there were other fights in the school yard that night just prior to and about the time of the difficulty between Huitt and defendant, Hanson, and one Davis had his throat cut

On the part of the defendant there was testimony to the effect that Huitt, the deceased, was advancing on defendant with his hand raised and talking loud, and defendant said, "Art, stand back," just before defendant struck him; that deceased was crowding upon defendant, with his right hand in his pocket or in the bib of his overalls, and defendant warned him back and told him if he didn't stop he would hit him with the club, but deceased continued to advance and defendant struck him with the club or stick.

Defendant testified he was nineteen years old; that he struck deceased to defend himself, to keep him from hurting him. He was coming at him with his right hand in his bib and it looked like he had something; that before he struck deceased he warned him to stand back three or four times, but he continued to come on. He was applying all kinds of abusive epithets to defendant.

The court instructed the jury on murder in the second degree, and manslaughter in the third and fourth degrees. As the jury convicted defendant of manslaughter in the third degree, it is unnecessary to discuss the correctness of the instruction on murder in the second degree. The instructions on manslaughter are as follows:

"2. The court instructs the jury that if you find from the evidence that the defendant killed the deceased at the time and place charged in Crawford county, Missouri, on the 15th day of November, 1908, with a club, and that the same was a dangerous weapon, and if such killing was done in a heat of passion

and without design to kill him, and if you further find that such killing was not done in self-defense as in these instructions defined, you will find him guilty of manslaughter in the third degree and assess his punishment at imprisonment in the state penitentiary for a term of not less than two nor more than three years, or by imprisonment in the county jail not less than six months or by a fine of not less than five hundred dollars, or by both a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months.

"3. Manslaughter in the fourth degree is the intentional killing of a human being in a heat of passion on a reasonable provocation and without malice aforethought, as these terms are hereinbefore explained and defined, and under circumstances that are not justifiable or excusable; and if the jury believe and find that the defendant in Crawford county, Missouri, on the 15th day of November, 1908, in a sudden passion aroused by reasonable provocation, intentionally struck and killed the deceased with a club, but without malice aforethought as hereinbefore defined, and not in self-defense as defined in these instructions, then the jury should find him guilty of manslaughter in the fourth degree and assess his punishment at imprisonment in the state penitentiary for a term of two years, or imprisonment in the county jail not less than six months, or by a fine of not less than five hundred dollars, or by both a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months.

"The term heat of passion as used in these instructions means a condition of quick or sudden anger aroused by some reasonable provocation."

I. The information is assailed as insufficient, because, it is asserted by counsel for defendant, "it fails to charge the wounding was done feloniously." The

proposition that the wounding must be charged to have been feloniously done is clearly sound, but is unsupported by the facts in this case. The information is sufficient.

II. The circuit court did not err in excluding the testimony of the witnesses as to statements made by various witnesses after the assault of defendant upon the deceased, nor in excluding the different difficulties that night between other parties. The trouble between deceased and defendant was independent of the other altercations. What these parties said and did under the evidence in this case could and would not have thrown any light upon the guilt or innocence of defendant of the particular charge made in the information in this case, and their acts and statements were no part of the *res gestae*. The circuit court admitted all the testimony that could enlighten the jury as to the part played by defendant and deceased, and the exclusion of the mere expressions of outside parties as to what other parties also were saying and doing, under the evidence in this case, was entirely correct.

III. Counsel for defendant earnestly insists that the circuit court erred in giving the instruction authorizing the jury to find defendant guilty of manslaughter in the third degree. Their contention calls for the most careful consideration and discrimination, in view of the statute defining manslaughter in the third degree, and the opinions of this court in various cases to the effect that "there can be no such thing as manslaughter in the third degree when the killing is intentional." [State v. Pettit, 119 Mo. l. c. 416; State v. Nocton, 121 Mo. l. c. 550; State v. Strong, 153 Mo. l. c. 555; State v. Vinso, 171 Mo. l. c. 591.]

Section 1828, Revised Statutes 1899, in force at the time the offense, if any, was committed in this case, and now section 4462, Revised Statutes 1909, provides: "The killing of another in a heat of passion

without a design to effect death, by a dangerous weapon, in any case except such wherein the killing of another is justifiable or excusable, shall be deemed manslaughter in the third degree.''

Opinions of courts ''to be properly understood must be read in the light of the facts adjudged to which they are intended to apply.'' [State ex rel. v. Smith, 172 Mo. l. c. 460.]

As well said by the Supreme Court of Mississippi in Pass v. McRoe, 36 Miss. 148: ''Such is the flexibility of language, and even of sentences disconnected from their context, as well as the special state of facts to which they have been applied, that in courts it has become a settled rule that all adjudications are to be considered only in connection with, and as explained by and limited to, the state of circumstances appearing in the record,'' that is, the essential circumstances constituting the case or that portion of the case on which the decision rests.

It is to be observed that the statute reads: ''The killing of another in a heat of passion, without a design to effect death, by a dangerous weapon, in any case except wherein the killing is justifiable or excusable, shall be deemed manslaughter in the third degree.''

From this language, this court in a number of decisions deduced the conclusion expressed in State v. Dunn, 80 Mo. l. c. 689: ''There can be no manslaughter in the third degree, when the killing was with the design to effect death. In this case it is manifest from the testimony that the killing was intentional.'' That language was well guarded. It meant and means that, where the evidence discloses that the act of the defendant could only be ascribed to a design to effect death, that he intended to kill his adversary, there could be no manslaughter in the third degree, and did not mean that one could not be guilty of manslaughter in that degree, if in a heat of passion he struck his adversary

with a dangerous weapon, under such circumstances that a jury might well say he did not design to effect death, or intend to kill him, by the blow, or homicidal act. This view, we think, is strengthened by the language of the court in Dunn's case, wherein it says: "If one inflict a mortal wound with a deadly weapon, upon a vital part, as in this case, he must be presumed to have designed the natural consequences of his act," which would be death. This was reasserted in State v. Strong, 153 Mo. 1. c. 555, wherein the court said: "And although defendant swears he did not intend to kill Gastine, though he stabbed him once in the arm and twice in the side, yet his testimony on this point is not to be received or made the basis of an instruction." [State v. Nelson, 118 Mo. 126.]

In State v. Nocton, 121 Mo. 550, 551, it was said: "It is well enough to remark that under the more recent rulings of this court, defendant's statement that he did not 'intend to kill' Clume when shooting directly at him and hitting him three times when only six feet away, is not to be believed in the face of the incontrovertible physical facts thus disclosed by the evidence. And if defendant shot at Clume with intent to kill him, and as he had a right to do in his proper self-defense, then he certainly could not have been guilty of an unintentional killing, to-wit, manslaughter in the third degree." [State v. Pettit, 119 Mo. 410.]

The foregoing adjudications establish without doubt that where it clearly appears that the killing is with the design to effect death, that it was intentional, there can be no manslaughter in the third degree, and in each of the cases commented upon, such was the case, but it must sometimes happen that the weapon with which the killing was done, may or may not be a dangerous one, according as the witnesses describe it, and its character is a fact which the jury must find, and whether the blow is given in passion must be determined by the jury.

In State v. Elliott, 98 Mo. 150, the facts were that there had been no previous difficulty. The quarrel arose without previous threats on the part of the defendant. This court said: "It is also clear that the evidence tends to show that the defendant acted from a passion, suddenly aroused; but the passion to be of any avail to him must have arisen from an adequate cause; and the question whether instructions should have been given upon manslaughter must turn upon the further question whether there is any evidence of such a cause or provocation. The principle of law is too well established to admit of question, that words alone, however provoking or insulting, will not reduce the killing to manslaughter. They alone do not furnish an adequate cause for the passion. [State v. Branstetter, 65 Mo. 153.] The abusive or insulting language of the deceased may, however, be given in evidence, for it tends to give character to and explain the act of the deceased. 'Hence,' says Bishop, 'if there is a present demonstration of impending violence, which alone would be insufficient, accompanying words, added to physical facts, may create such peril as will justify the killing of the aggressor, or reduce it to manslaughter.' [2 Bish. Crim. Law (6 Ed.), sec. 704.]"

Accepting this as the settled law of this State, the facts here are that there had been no previous grudge between defendant and deceased; the deceased had been drinking whiskey, according to the testimony, and under these circumstances, when defendant remarked that the club which McGeethen had kicked, was Arthur Huitt's, deceased at once called defendant a liar, and when defendant replied, "Don't call me a liar," deceased advanced in a hostile manner and was warned by defendant to stand back or he would hit him with the stick or club, which the evidence tends to show he had picked up after the wordy altercation had begun. Deceased, however, continued to

advance with his right hand in the bib of his overalls, and thereupon defendant struck him over the head with the stick or club, and as deceased staggered or fell, a revolver fell out of his hand. While the epithet of liar, under settled law of this State, did not alone furnish an adequate cause for passion, that epithet accompanying the demonstration of intended violence by deceased was sufficient to arouse the passion of a normal man, and furnished a sufficient provocation which is one of the essentials of manslaughter in the third degree.

This court in State v. Wilson, 98 Mo. l. c. 451, adopted with approval the following statement of Russell on Crimes: "It has been shown that the most grievous words of reproach . . . will not free the party killing from the guilt of murder, if upon such provocation a deadly weapon was made use of or an intention to kill or to do some great bodily harm was otherwise manifested. But if no such weapon be used, or intention manifested, and the party so provoked give the other a box on the ear or strike him with a stick or other weapon not likely to kill, and kill him unluckily and against his intention, it will be only manslaughter." [1. Russell on Crimes (9 Ed.), 783; 3 Greenleaf, Ev., sec. 122; 1 Wharton's Crim. Law (9 Ed.), secs. 101-455.]

That defendant struck the fatal blow in a heat of passion upon reasonable provocation, we think the evidence abundantly established, and taking all the circumstances into consideration, the absence of previous grudge or malice, the suddenness of the difficulty, the size of the deceased, shown to have been a man weighing 165 pounds, the character of the stick or club with which the blow was struck, we think the jury were properly allowed to pass upon the question whether the defendant designed to effect the death of Huitt, and if he did not, even though he unluckily killed Huitt, he was guilty only of manslaughter in the third de-

gree. [State v. Wilson, 98 Mo. l. c. 449, 451; State v. Elliott, 98 Mo. 151.]

We hold therefore the circuit court did not err in giving the instruction on manslaughter in the third degree.

The judgment of the circuit court is affirmed. *Burgess* and *Kennish, JJ.,* concur.