## THE STATE v. EATON, *Appellant.*

1. **Pendency of Former Indictment.** The pendency of a former indictment for the same offense is no bar to the second indictment. R. S. 1879, § 1808. Overruling *State v. Smith*, 71 Mo. 45.

2. **Murder in the Second Degree.** When the circumstances of deliberation and malice are not proved, the law will only presume a homicide to be murder in the second degree.

3. **Murder: DELIBERATION.** An instruction that "deliberation" means "in a cool state of the blood, that is, not in a state of mental excitement, caused by lawful provocation;" *Held,* error. See *State v. Curtis,* 70 Mo. 594.

4. ———: SELF-DEFENSE. To justify a homicide on the ground of self-defense, it is sufficient to show an apparent danger affording a reasonable ground for apprehension on the part of the slayer that unless he kill or disable his adversary, his own life or limbs are in imminent peril.

5. ———: THREATS. One whose life has been threatened is not bound to wait, before he begins to defend himself, for personal violence or an assault made upon him. On the other hand, he has no right to hunt up the threatener and slay him, or to take his life at all unless

the threatener, when they meet, by his conduct manifests a purpose to carry the threat into execution.

6. **Criminal Law**: WITNESSES. The State is not bound to call as witnesses all the persons who are cognizant of a criminal transaction. See *State v. Kilgore*, 70 Mo. 546.

7. **Practice, Criminal**: CLERICAL ERROR IN INDICTMENT. An indictment for murder charged that defendant wounded deceased on the 30th of August, and that in consequence thereof deceased languished "until the 1st of September, on which day of *August* in the same year he died." *Held*, that the insertion of the word August, where it last appears was manifestly a clerical error, and not a sufficient ground for arresting the judgment.

*Appeal from Benton. Circuit Court.*—HON. F. P. WRIGHT, Judge.

REVERSED.

*M. A. Fyke* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

HENRY, J.—The defendant was indicted at the October term, 1878, of the Benton circuit court for the murder of James S. Hatler, on the 26th of August, 1878. He was arrested under that indictment and admitted to bail September 11th, 1879. At the ensuing October term of said court a second indictment was found against him for the same offense, charging the shooting to have been done on the 30th day of August, 1878, and that Hatler's death resulted from it on the 1st day of September, 1878. He was arraigned at the October term, 1879, and pleaded not guilty, but there was a mis-trial. He was tried again at the May term, 1880; and found guilty of murder in the second degree, and his punishment assessed at fifteen years in the penitentiary. From the judgment thereon he has appealed.

No notice was taken of the fact that an indictment

1. PENDENCY OF FORMER INDICTMENT. against him for the same offense was preferred by the grand jury at the October term, 1878,

until defendant filed his motion for a new trial, in which one of the grounds relied upon was that there was "a former indictment pending against him in this court, found at a former term, for the same offense, which was not quashed prior to the time defendant was put upon trial herein, but the same was, and still is, pending." This motion was overruled and this is the principal question discussed by defendant's counsel in his oral argument. The *State v. Smith,* 71 Mo. 45, and the *State v. Webb,* 74 Mo. 333, are relied upon by him. The *State v. Smith* is directly in point and sustains his position, and in the *State v. Webb,* although this question was not carefully considered, and its decision was not necessary to the determination of the cause, this doctrine of the *State v. Smith,* was incidentally recognized. But a more careful consideration of the subject has brought us to the conclusion that the doctrine announced in the *State v. Smith,* and recognized in the *State v. Webb,* is not maintainable, either on reason or authority. No authority is cited in the *State v. Smith,* in support of this doctrine, and, as we are of the opinion that it is erroneous, avail ourselves of the earliest opportunity to correct it.

Section 1808 of the Revised Statutes provides that: "If there be at any time pending against the same defendant two indictments for the same offense, or two indictments for the same matter, although charged as different offenses, the indictment first found shall be deemed to be suspended by such second indictment and shall be quashed." The statute of New York is identical with ours, except that, where the word "suspended" occurs in ours, the word " superseded " is employed in the New York statute.

In *Austin v. State,* 12 Mo. 394, the court, commenting on section 4, page 867, of the Revised Statutes, identical with section 1808 of the present revision, said : " This statute is the law that must govern in this case, and I must examine the defendant's plea by this statute. A plea under this statute should state that the indictment pleaded to was the one which was first found, and should state that

the offense charged in the two indictments is not only the same offense, but is the same matter, the same transaction, the *una et eadem res acta.*" The statute suspends the first indictment, and declares that it shall be quashed. There could, therefore, be no prosecution under that indictment, because the finding of the second indictment suspends it. There could be no good plea to the second indictment, based on the fact that another had been previously preferred that had not been quashed. This was expressly ruled in *Austin v. The State, supra.* There is nothing in the section to impair, in any manner whatever, the second indictment. Certainly a plea to the jurisdiction could not be maintained. The court does not lose jurisdiction of the cause, because a former indictment, unquashed, was preferred. The right of the State to find a second indictment against the accused for the same offense, is distinctly recognized by the statute. The accused may have the first quashed. The court might, without any motion filed by him for that purpose, quash the first indictment, but whether it is quashed or not, is a matter of no consequence in the prosecution on the second indictment.

In the *People v. Fisher,* 14 Wend. 9, the same question was raised on that section of the New York statute above noticed, and Savage, C. J., said: " We have the authority of Hawkins for saying that a plea of a former indictment pending for the same offense, is bad, and by our Revised Statutes, the first indictment is superseded by the second, and liable to be quashed. It is not, therefore, a bar to such second indictment." For these reasons, and on the foregoing authorities, we are constrained to overrule the *State v. Smith,* and so much of the *State v. Webb* as sanctions it.

The evidence on the trial of the accused was conflicting. On the part of the State, it tended to prove that the defendant was in a store-house in the town of Fairfield, and through the store window saw deceased passing along the street, and, stepping to the door, called to the deceased to " throw up his hands," and instantly shot him, inflicting

the wounds of which he died. The evidence on the part of the defense, tended to prove that about a week previous to the tragedy at Fairfield, the deceased and defendant had a difficulty, and deceased, in the language of witnesses, "Got the drop on defendant," and made him hold up his hands; that deceased had made threats against defendant's life repeatedly after the previous difficulty; that about thirty minutes before he was shot, he was seen capping his pistol, which, when he was shot, was in plain view, at his side in the waist of his pantaloons, he having on neither coat nor vest. One witness testified (a brother of defendant) that deceased drew his pistol before defendant fired, and another that he attempted to draw it, and another that he had one hand on the handle, and with the other was holding the barrel of the pistol. No witness testified to the communication to defendant of any threat against him by the deceased. The nearest approach to a communication of any threat made by deceased, is to be found in the testimony of Creed Moore, which was that at the mill in Fairfield, on the day of the shooting, he said to defendant, "Look out." Defendant inquired "Why?" Witness said: "You may get hurt." Hatler's name was not mentioned, and if defendant had at that time heard no threats made by the deceased, there was nothing to connect Hatler's in his mind with the warning given by Moore, except that he and defendant had had a difficulty a week before. There was also evidence that Hatler was a quarrelsome, turbulent and dangerous man. The defendant's brother and other witnesses testified that they saw deceased putting caps on his pistol, about a half hour before he was shot, and yet neither of them communicated that fact to defendant.

The court instructed the jury on murder in the first and second degree, and manslaughter. The court correctly

2. MURDER IN THE SECOND DEGREE. defined murder in the second degree to be "the willful, felonious and premeditated killing of a human being, with malice aforethought, but without deliberation," as these terms, "willful," "felonious,"

"premeditated" and "deliberation," are defined in the first instruction given for the State; and in the same instruction told the jury, "that when the circumstances of deliberation and malice are not proved, the law will only presume the killing to be murder in the second degree." Of the latter clause of the instruction, defendant's counsel complains, alleging that it dispenses with proof of deliberation and malice, and declares that the law presumes them. Deliberation is out of the question, as the jury, by their verdict, found there was none; and we think the instruction not open to the criticisms made upon it. The meaning is obvious, that in the absence of proof of express malice the law presumes it from the intentional use of a deadly weapon, as declared in a previous instruction.

The court, however, in its first instruction incorrectly defined the word "deliberation" to mean "in a cool state of the blood, that is, not in a state of mental excitement, caused by lawful provocation," etc. *State v. Wieners*, 66 Mo. 13; *State v. Curtis*, 70 Mo. 594.

3. MURDER; deliberation.

The instruction given by the court on the theory of self-defense, correctly told the jury: "If defendant had reasonable cause to apprehend a design on the part of deceased to do him some great personal injury, and there was reasonable cause to apprehend immediate danger of such design being accomplished, without the fault of defendant, they should acquit him;" but the court refused an instruction asked by defendant, embodying the principle contained in the foregoing instruction, with the addition, that "then defendant had the right to act upon appearances, and even kill Hatler if necessary to avoid the apprehended danger, and such killing was justifiable, although it might afterward turn out that the appearance was false, and there was, in fact, neither design on the part of Hatler to do him serious injury, nor danger that it would be done." On the evidence introduced for the defense, that instruction should have been given. 2

4. ——: self-defense.

Wharton Crim. Law, § 1026. We do not mean to say that a mere supposititious or conjectural danger—a danger existing only in the imagination of the accused, will excuse or justify a homicide. There must be an apparent danger affording a reasonable ground for apprehension on the part of the slayer, that unless he kill or disable his adversary, his own life or limbs are in imminent peril. Whether the appearances of danger to the accused were such as to afford such reasonable ground of apprehension, is a question for the jury. It was for the jury to pass upon the weight of the evidence on the part of the accused, as to the attitude and demonstrations of the deceased, at the time he was shot, and the court could not, virtually, withdraw it from them by refusing to present, in a proper instruction, that theory of the case.

Appellant also complains of one of the instructions given to the jury with respect to alleged threats made

5. ——: threats. against him by the deceased. It was as follows, in substance: That although the jury should believe from the evidence that Hatler was reputed to be a vindictive, rash and dangerous man, and had, previous to his death, made threats against Eaton, and that these threats had been communicated to Eaton, yet these circumstances alone would not justify or excuse the offense of murder, provided they believed, that at the time of the homicide Hatler made no assault, and used no personal violence against Eaton.

No such instruction should have been given, because there was no evidence that any threat made by Hatler had ever been communicated to Eaton; and if it had been otherwise, the instruction is erroneous in that it requires one whose life has been threatened, to wait, before he begins to defend himself, for personal violence or an assault made upon him. The instruction in this respect is inconsistent with the instructions given by the court, on the theory of self-defense. We are not to be understood as giving sanction to the doctrine, that a threatened man may

hunt the threatener, and slay him because of the threat. Such is not the law of this State. Although it has occasionally, in some of the states, had the sanction of their highest judicial tribunals, we think we may safely say, that it is not permanently embodied in jurisprudence of any state in the union. The person threatened has no right to take the life of the other, unless that other, when they meet, by his conduct manifests a purpose to carry the threat into execution; but such purpose may be manifested by conduct falling short of personal violence or an actual assault.

We think the court did not err in instructing the jury on murder of the second degree. Whether it was a deliberate murder, or a murder committed without deliberation, on a provocation given at the time, or manslaughter, or excusable homicide, was properly left to the jury to determine, on all the facts before them. If they had found him guilty of either of the offenses, we could not say that the verdict was not warranted by the evidence.

Nor did the court err in refusing to compel the State to call other persons to testify for the State, after she had closed her evidence, on the suggestion of defendant's counsel that there were, besides those already introduced by the State, other persons present who witnessed the homicide. The *People v. Jno. Gordon*, 40 Mich. 716, is relied upon by appellant as sustaining him in this position. We do not so understand the case. Campbell, C. J., delivering the opinion of the court, observed that: "The prosecution had in court a witness named in the information, convicted of the charge, who was in the custody of the law, and who must necessarily have known the facts. Their suppression of this positive testimony, which they were in every consideration of justice bound to produce, entitled the prisoner to every inference that could be drawn from it." It was not there held that the refusal or neglect to call such witness, was an error which would warrant a reversal of the judgment.

6. CRIMINAL LAW: witnesses.

38   75

One accused of crime is entitled, in this country, to the State's process to compel the attendance of such witnesses as he may desire, and there is, therefore, no sound reason for requiring the State to introduce all persons to testify who were witnesses to the alleged criminal act. It is not unfrequently the case, that a hundred persons are present at a homicide, and to require the State to introduce them all, would unreasonably protract a trial, and cause a vast and unnecessary accumulation of costs. We see no reason why the State's attorney, acting under his official oath, and as much bound, as the representative of the State, to protect the innocent as to bring the guilty to justice, should not be left to his discretion, as to what number and character of witnesses he will call for the State, to prove an alleged crime, against the accused. If others than those called by him know facts favorable to the accused, he may have process to compel their attendance, and, if they come to speak the truth, a cross-examination by the State's attorney can be a matter of no consequence to them. We are not impressed with the force of the argument in favor of the proposition contended for by appellant's counsel.

Nor do we think the indictment open to the objection urged by the appellant, that the "striking," "penetrating" and "wounding" of the deceased is not alleged to have been willfully done. It alleged that defendant, "feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did make an assault" upon the body of James Hatler, and that said Joseph Eaton, with a pistol then and there charged with gunpowder, etc., which he held in his hands, then and there feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, discharged and shot off to, at and against said Hatler; and that said Eaton, with one of the bullets, aforesaid, out of the pistol, then and there by him shot off and discharged, then and there feloniously, deliberately, premeditatedly and of his malice aforethought, did strike, penetrate and

wound the said Hatler,    *    *    and concludes as follows : " That the said Joseph Eaton, him the said James S. Hatler, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did kill and murder, against the peace and dignity of the State." We think that the indictment substantially charged the offense of murder.

The indictment also charged the wounding of deceased to have occurred on the 30th of August, and that Hatler, **7. PRACTICE, CRIMINAL : clerical error in indictment.** in consequence thereof, languished until the 1st of September, on which day of August in the same year he died. The insertion of August for September was manifestly a clerical mistake, and is not a sufficient ground for arresting the judgment. *Ailstock's case*, 3 Gratt. 650.

For the reasons hereinbefore assigned, the judgment is reversed and the cause remanded. All concur.