The State v. Johnson.

THE STATE v. JOHNSON, *Appellant*.

| | |
|---|---|
| 76 | 121 |
| 98 | 144 |
| 76 | 121 |
| 100 | 673 |
| 76 | 121 |
| 106 | 224 |
| 76 | 121 |
| 111 | 600 |
| 76 | 121 |
| 115 | 461 |
| 117 | 603 |
| 76 | 121 |
| 118 | 85 |
| 76 | 121 |
| 156 | 190 |
| 76 | 121 |
| 177 | ᵇ716 |

1.  **Practice**: EVIDENCE.  The record in this case shows that a mass of testimony tending to establish material facts was received in spite of an objection going to the whole.  While most of it was clearly admissible, the rest might well have been excluded had specific objections been made.  *Held*, that no error was committed.

2.  **Dying Declarations.**  It is the province of the trial court to determine whether declarations offered as dying declarations were made *in articulo mortis*.  In the present case certain declarations admitted by •the trial court on that footing; *Held*, to have been properly admitted.

3.  **Homicide**: EVIDENCE: PRACTICE.  Upon a trial for homicide the State is not bound to call as witnesses all the persons who were present.

4.  **Practice**: IMPROPER REMARKS OF PROSECUTING ATTORNEY.  If the prosecuting attorney is permitted by the trial court, in spite of objections from the defendant, to address improper remarks to the

jury, this court will reverse the judgment; but unless it is certain that the remarks were of an improper character, it will not interfere.

5. **The Right of Self-Defense.** The right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is sought for and induced by the party himself. On the other hand, to justify the killing of an adversary on this ground, it is not necessary that the danger apprehended by defendant should have been real or actually impending. It is only necessary that the defendant should have had reasonable cause to apprehend that there was an immediate design to kill or do him some great bodily harm, and that there should have been reasonable cause to apprehend immediate danger of such design being accomplished.

6. **Instructions.** An instruction is properly refused, which ignores a material question in the case although it announces a principle which is correct in the abstract.

7. **Practice, Criminal:** INSTRUCTING THE JURY   It is the duty of the court in criminal cases to define in its instructions only the crimes of which defendant could be convicted under the indictment, and of which there is evidence in the case.

\. **Pleading, Criminal:** MURDER. The indictment in this case states as specifically as possible where and when the deceased died.

*Appeal from Clay Circuit Court.*—HON. GEORGE W. DUNN, Judge.

AFFIRMED.

*E. J. Broaddus, C. J. Garner, G. D. Ross, Jeff. Davis and Samuel Hardwicke* for appellant.

*D. H. McIntyre,* Attorney General, for the State.

NORTON, J.—The defendant was jointly indicted with Aaron Harpster at a special term of the Clinton county circuit court, held on the 15th day of December, 1879. He is charged by the indictment with murder in the first degree in killing one Henry C. Culver, and Harpster is charged with being an accessory after the fact. At the April term, 1880, of said court, on defendant's application, a change of venue was awarded to the circuit court of Clay county, and at the February term, 1881, of said court, a

severance was granted to Harpster. Defendant was put upon his trial at the February term, 1882, of said court, and convicted of murder in the second degree, and his punishment assessed at twenty-five years' imprisonment in the penitentiary. Motions for new trial and in arrest having been overruled, defendant appealed to this court.

There are a great number of grounds stated in the motion for new trial, but we shall only consider such of them as counsel have deemed of sufficient importance to call our attention to in their briefs, the first of which is, that the court erred in overruling defendant's motion to dismiss the cause, for the reason that it did not appear from the record that the grand jury returning the indictment had been sworn. We find, upon an examination of the record, that the transcript first filed by the circuit clerk of Clinton county in the office of the clerk of the Clay circuit court did not show that the grand jury had been sworn, but we also find that before the determination of the motion for new trial the prosecuting attorney suggested a diminution of the record, and upon such suggestion being made the court awarded a *certiorari* directing the clerk of the Clinton county circuit court to send up a true, complete and perfect transcript. The transcript sent up and certified to by the said clerk in obedience to the *certiorari* shows that the grand jury was sworn; and the motion for new trial based on that ground was properly overruled.

It appears from the evidence in this case that Culver, the deceased, was marshal of the town of Cameron, and also a deputy constable, and that he was shot and killed while attempting to arrest defendant. The State was allowed, over the objection of defendant, to introduce the evidence of one McGuire and Harpster, to the effect that during the day on which Culver was killed and previous to the killing, defendant had shot off his pistol two or three times in the streets of said town, and also had shot at a dog in the street a short distance from Culver's house and a short time before the attempted

1. PRACTICE: evidence.

arrest; that defendant said he had made some "son of a bitch git;" had had trouble; that the marshal was after him and was going "to raise a row;" that defendant exhibited two pistols, and afterward bought some cartridges and procured another pistol a short time before the shooting of deceased; that he said to Harpster that the marshal was after him, and if he "fooled with him he would fix the son of a bitch," that he had two revolvers in his hands rubbing them together. Witness Harpster also stated, that when he and defendant went to the livery stable to get their horses, Johnson said, "let us steal the horses out." Witness said he would pay for both rather than do that. Johnson drew his revolver and would not let him pay. This witness also detailed what occurred at the time of the shooting. The objection made by defendant, as shown by the record, went to the whole of this evidence, and we think it was properly overruled, even though that portion of it which detailed the conversation at the livery stable might well have been excluded had a specific objection been made to it. The evidence objected to tended to show that defendant knew deceased was a marshal, that he anticipated arrest or attempt at arrest, that he had resolved to resist the arrest and was preparing himself with weapons for that purpose; and it was clearly admissible to establish these things.

It is also insisted that the declarations of deceased after he was shot, should not have been received in evidence, as it did not appear they were made *in extremis* and under a well-founded apprehension of impending dissolution. This objection is not sustained by the record. Dr. Adams, who was called to see deceased immediately after he was shot, stated that Culver died in ten or fifteen minutes after he reached him, and Culver said, "Oh! Doc., what will become of my poor wife and mother," that he could not live, and requested witness to lay him down, saying, "I must die; I cannot live;" that witness then asked him if he knew who killed

2. DYING DECLARATIONS.

him, and he replied the "Kidder man;" and upon then being asked if he knew his name, said "Rediker knows." It was the province of the court to determine whether these declarations were made *in articulo mortis*, and we are of opinion that the court decided correctly in holding that they were so made and in admitting the evidence. *State v. Simon,* 50 Mo. 370.

It is also insisted that the evidence of Dr. Adams and Provolt as to the dying declarations, should not have been

3. HOMICIDE: evidence: practice. admitted without the State being required to introduce Potter and Risely, who were present when they were made. This objection is not well founded, it having been held by this court in the case of the *State v. Eaton,* 75 Mo. 586, that it was not necessary for the State to produce all the witnesses who were present at the commission of a homicide.

It is also insisted that the court erred in not sustaining the motion for new trial because of improper comments

4. PRACTICE: improper remarks of prosecuting attorney. made by the prosecuting attorney in his closing argument to the jury. If the State's attorney in said argument made the statements imputed to him in the affidavits of Sarah E. and Nannie Johnson, accompanying the motion for new trial, and they had been objected to, and the attention of the court called to them, and the court had refused to sustain the objection, we would be justified, according to the ruling in the case of *State v. Lee,* 66 Mo. 165, in interfering with the judgment. But the fact as to whether such statements were made was disputed in a counter-affidavit filed by the attorney for the State, in which he contradicted the essential facts stated in the affidavits of Sarah E. and Nannie Johnson and set forth what in fact he did say. If the attorney only said what he sets forth in his affidavit, it would not justify a disturbance of the judgment. The speech was heard by the court, and the judge was in a better position than we are to determine the disputed fact as to what he

said, and we will accept his ruling in that respect as being correct.

The court instructed the jury as to what constituted murder in the first and second degrees, and also as to excusable and justifiable homicide. No complaint is made as to the propriety of the instructions on behalf of the State except to the fifth, which is as follows:

5. The right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is sought for and induced by the party himself—commenced or brought on by any willful act of his toward his antagonist, or where he voluntarily and of his own free will enters into a difficulty. If the defendant was expecting a difficulty with the deceased, his right to defend himself did not arise until he had done everything in his power to avoid the necessity. If he could have safely avoided using the weapon he was not justifiable in taking the life of the deceased.

This instruction in the first part of it asserts a correct principle of law, and the latter part is but an application of it to the case before the court, and taking it in connection with the third instruction given for defendant, the law was fairly put to jury. *Commonwealth v. Drum,* 58 Pa. St. 9; *People v. Sullivan,* 3 Seld. (N. Y.) 396; 1 Wharton Crim. Law, § 486. The said third instruction was as follows:

3. That if the jury believe from the evidence that the defendant did not know the deceased, Culver, or his official position, and that defendant, with one Aaron Harpster, had started home, and while on their horses the deceased seized hold of the defendant and the reins of the bridle or halter on his horse, and that the defendant, from the circumstances, had a reasonable cause to apprehend a design on the part of the deceased to kill him, or to do him some great personal injury, and that he had reasonable cause to apprehend immediate danger of such design being accomplished, then the killing is justifiable in law. And

it is not necessary that the danger apprehended by defendant should have been real or actual,.or that said danger was actually impending. It is only necessary that the jury should believe that the defendant had reasonable cause to apprehend that there was an immediate design to kill or do him some great bodily harm, and that there was reasonable cause to apprehend immediate danger of such design being accomplished.

The action of the court in refusing the following instruction is also excepted to :

4. The jury are instructed that if from the evidence they believe said Culver assaulted defendant, by grabbing
6. INSTRUCTIONS.  hold of him or his bridle reins, or by any menacing conduct on the part of said Culver, the law did not require defendant to save himself by turning and fleeing, but he might turn upon his assailant and use any necessary force or means to prevent such assault or injury to himself.

While the principle announced in the instruction is abstractly correct, it was misleading in this, that it ignored the question of knowledge on the part of Johnson as to the fact that Culver was an officer of the law, as well as the purpose of the assault, and as the third instruction for defendant covered substantially the same ground, there was no error committed in refusing it.

It is also insisted that the court erred in not instructing the jury as to manslaughter in the fourth degree, al-
7. PRACTICE, CRIM-  though not requested to do so. In the case
INAL: instructing
the jury.        of *State v. Branstetter*, 65 Mo. 149, it was held to be the duty of the court in a criminal case only to define in its instructions, each crime of which, under the indictment, defendant could be convicted, and of which there was evidence in the case. The deceased was an officer of the law and at the time he was shot by defendant was attempting to arrest him without a warrant.

If defendant did not know deceased Culver was an officer and he killed him without malice and the resistance

to the arrest was proportioned to the assault, the killing was justifiable, and the jury were in effect so told in the third instruction for defendant. Although the attempted arrest may have been illegal, nevertheless if defendant killed the deceased with express malice, the killing was either murder of the first or second degree, and not manslaughter in any of its degrees. *Roberts v. State,* 14 Mo. 138; 1 East P. C. 311; *Rafferty v. People,* 72 Ill. 37.

The evidence in this case tended strongly to show that defendant knew the deceased was the marshal of the town of Cameron, that he was after him for the purpose of arresting him for shooting off his pistol in the streets of said town, that defendant had threatened, a short time before the shooting, that he would fix the marshal if he " fooled with him," that at the time of such threat he exhibited two pistols, and but a few minutes before the tragedy he procured cartridges and a third pistol; and that when deceased directed defendant to halt and caught his horse by the bridle defendant immediately shot the deceased and rode off, he being on horseback at the time. Under this evidence an instruction defining manslaughter would not have been proper.

It is also insisted that the motion in arrest of judgment ought to have been sustained because the indictment 8. PLEADING, CRIM- did not allege where and when the deceased INAL: murder. died. This objection is not borne out by the record. The indictment, after alleging the infliction of the mortal wound, alleges as follows: " Of which said mortal wound the said Henry C. Culver, then and there, on the said 29th day of November, 1879, at Cameron, in the county of Clinton aforesaid, and State aforesaid, did languish and languishing immediately did die." It would be impossible to state more specifically when and where the deceased died.

We perceive nothing in the record which would justify our interference with the judgment, and it is hereby affirmed, in which all concur.