# THE STATE v. DICK MELVIN, Appellant.

### Division Two, February 4, 1902.

1. **Filing and Quashing Second Indictment: EFFECT: STATUTE.** The filing and quashing of a second indictment against the same defendant charging the same offense, does not *ipso facto* quash the first indictment, nor is the defendant, on the quashing of the second, discharged. The language of the statute is that "the indictment first found shall be deemed to be *suspended* by such second indictment and shall be quashed;" it does not say that the first indictment is "superseded." Hence, if no effort is made to quash the first indictment, and the second is afterwards quashed, the effect is to revive the first by removing the only obstacle which caused its suspension (Overruling the *obiter* doctrine of State v. Daugherty, 106 Mo. 182).

2. **Self-Invited Error in Instruction.** Defendant can not complain of errors in instructions which he himself invited.

3. **Principal in Second Degree: ASSAULT: INSTRUCTION.** A person who feloniously and on purpose is present and aids and abets in the stabbing of another is equally guilty as the person who actually did the stabbing, and in such case it is not error to instruct the jury to convict him if they find he committed the assault himself or was present and aided him who actually did so.

4. **Flight: INSTRUCTION.** Defendant and his brother had been at work in Kansas, and came home to get some clothes which their mother had made or repaired. As they started back, they saw the prosecuting witness in the street, and the brother, shouting that he could "fix him," started towards him, casting aside his bundle of clothes as he went. The effort of this brother to cut the prosecuting witness with a knife was successfully resisted till defendant appeared and dangerously stabbed him in the back. When defendant saw the blood he said, "My God, boys, lets hit her for Kansas," and immediately they ran off, crossed the river into Kansas, and defendant on being arrested there first refused to return to Missouri without requisition papers, but afterwards consented to do so. *Held*, the evidence abundantly justified an instruction on the presumption from flight.

5. **Criminal Law: MOTIVE: FAILURE TO REQUEST INSTRUCTION.** Where no instruction on motive was requested by the defendant, and no

State v. Melvin.

request was made by him to have the court instruct upon all the law of the case, the court did not err in failing to instruct on motive.

Appeal from Platte Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Guy B. Park* and *James H. Hall* for appellant.

(1) The motion to dismiss or quash should have been sustained. Indictment 1716, returned December 9, 1899, was an indictment against Dick Melvin and quashed the prior indictment 1709. R. S. 1899, sec. 2522. State v. Anderson, 96 Mo. 245; Austin v. State, 12 Mo. 393; State v. Vincent, 91 Mo. 665. Had Dick Melvin been arrested and arraigned under indictment 1716, a motion to quash could not have been sustained. State v. Stacey, 103 Mo. 14; State v. Davis, 29 Mo. 395; State v. Harper, 71 Mo. 427. (2) The indictment being quashed and suspended by operation of statute, no evidence should have been permitted to be introduced. R. S. 1899, sec. 2522. (3) Under the State's evidence, defendant was, if anything, principal. Under the evidence for defense he was neither principal nor accessory. While the law (sec. 2364, R. S. 1899) says an accessory before the fact or principal in the second degree shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried and convicted and punished in the same manner as a principal, it does not say that a principal may be tried as an accessory, and certainly it can not intend that one person may be both principal and accessory. There was no evidence on which to base instruction 2 and it is, therefore, erroneous. State v. Trice, 90 Mo. 112; State v. Parker, 106 Mo. 217; Paddock v. Somes, 102 Mo. 226. (4) "Under the facts as disclosed, the instruction should have directed the jury, in passing upon de-

fendant's purpose in leaving the place of assault, whether or not to avoid arrest, to take into consideration the fact that he made no effort at concealment and was found by the officer in his room at his usual place of abode"—in bed.    State v. Fairlamb, 121 Mo. 147; State v. Walker, 98 Mo. 95; State v. Evans, 138 Mo. 127; State v. Hopper, 142 Mo. 482.    (5) There was no motive for the crime shown, and the court should have instructed the jury as to the legal effect of absence of motive, whether asked or not.    State v. Rufus, 149 Mo. 406; State v. Palmer, 88 Mo. 568.

*Edward C. Crow,* Attorney-General, and *Jerry M. Jeffries* for the State.

(1) Where two indictments are found charging the same offense, a proceeding upon either one is perfectly proper after the other indictment has been dismissed.    State v. Andrews, 76 Mo. 101.    This section of our law does not of itself quash the previous indictment, but simply suspends the same.    The intention of the lawmakers could not make this section apply to cases like the one now under consideration.    The first indictment would only be suspended until the second is determined and upon trial resulting either in conviction or acquittal, it would then quash the former indictment.    It has been held that in a proceeding on a second indictment it is immaterial whether the first indictment be quashed or not. State v. Vincent, 91 Mo. 62; State v. Andrews, 96 Mo. 241. There could be no object or reason in applying the statute wherein the second indictment is quashed before trial is entered upon the first.    Indictment 1716 was evidently framed for the purpose and intention of indicting Al. Melvin and charging him with aiding, helping, abetting, assisting, comforting and maintaining the said Dick Melvin in felonious assault, and it does not indict Dick Melvin nor does it attempt to do so, but the simple words, "against the peace and dignity of the State"

being found in the body of the indictment would not of itself cause the indictment to be in two counts, nor would it make the indictment a joint one.     Indictment 1709 charges Dick Melvin as principal and indictment 1716 charges Al. Melvin as an aider and abetter to the act.     Evidently the pleader sought in indictment 1709 to set out the individual acts of the defendant and in indictment 1716 he sought to set out the acts of Al. Melvin and had no intention of charging, and did not charge, the defendant in that indictment.     State v. Payton, 90 Mo. 220; State v. Anderson, 89 Mo. 312; State v. Rambo, 95 Mo. 462.     (2) The rule in civil practice as to testing the sufficiency of the pleadings by an objection *ore tenus* to the introduction of evidence does not apply in criminal practice.     State v. Duncan, 116 Mo. 288; State v. Myer, 99 Mo. 107.     (3) There is no evidence in this cause which would warrant an instruction fixing a lower degree of punishment than is fixed by instruction number one.     The defendant is either guilty of assault with intent to kill, or he is not guilty at all.     Where two persons jointly commit a murder, the one doing the murderous act and the other being present, aiding, abetting and assisting therein, both are principals, and the indictment in such case may allege the matter according to the facts or charge them both as principals in the first degree.     State v. Schuchmann, 133 Mo. 111; State v. Hermann, 117 Mo. 629; State v. Brown, 104 Mo. 365; R. S. 1899, sec. 2364; State v. Miller, 100 Mo. 606; State v. Anderson, 89 Mo. 312.     (4) The defendant complains that there was no motive for the crime and contends that the court should have given the jury an instruction on the effect of the absence of a motive for the crime. Under our law, a person is presumed to intend the natural and probable consequences of his acts, and where a person uses a deadly weapon at some vital part without just cause or provocation, it must be presumed to have been done wickedly and from a bad heart.     The motive is presumed.     This presumption may be rebutted by the testimony of the accused or of

others, but there is no such evidence here, and the instruction given was proper.    State v. Patterson, 116 Mo. 505; State v. Hall, 85 Mo. 669; State v. Banks, 73 Mo. 592.

GANTT, J.—The indictment in this cause was returned by the grand jury in the circuit court of Platte county on December 7, 1899, and charged the defendant with a felonious assault.    Afterwards, at the same term, another indictment was preferred on December 9, 1899, wherein it was charged that defendant committed a felonious assault upon the same person, one Jeff Simpson, and that Al. Melvin was present aiding and assisting in said felony.    When the defendant was required to plead at the November term, 1900, of said court he filed a plea in abatement of the first indictment on which he was arraigned for the reason that he averred that the finding and preferment of the said second indictment *ipso facto* quashed the first indictment, and that it was no longer pending, and prayed the judgment of the court to discharge him, and that said first indictment to which he was required to plead should be quashed.

The indictment found on December 7, 1899, was numbered 1709, and the indictment of December 9, 1899, was numbered 1716.    On the hearing of this plea the two indictments with the dates of their filing were offered, and read to the court, and on the part of the State the record of the court showing that on August 14, 1900, on motion of the prosecuting attorney, the said second indictment numbered 1716 had been quashed by the circuit court of Platte county, and the defendant discharged therefrom.    The circuit court overruled the plea in abatement and to quash the indictment and directed the defendant to plead to said indictment of December 7, 1899, and the defendant standing mute, a plea of not guilty was entered for him on the record, and the cause proceeded.

On the part of the State the evidence tended to prove that on Sunday, October 29, 1899, the defendant's mother and his

brother, John Melvin, lived in the village of Waldron in Platte county, and just across the street a brother of Jeff Simpson, the prosecuting witness, lived. The defendant, Dick Melvin, and his brother, Al. Melvin, who at that time was only seventeen years of age, were and had been for some time at work in the State of Kansas, just across the Missouri river from Waldron. There they met one Al. Owens. On Sunday, October 29, 1899, the three went to Waldron, the two Melvin boys ostensibly for the purpose of getting some new clothes their mother had made for them. They reached Waldron between three and four o'clock on the afternoon of that day. Al. Melvin took the lead when the three men left his mother's home, the defendant and Owens following him very closely. Jeff Simpson was just outside of the yard fence at his brother's house when Al. Melvin saw him and without any apparent cause whatever said, "There is the d——d devil now, I can soon fix him," and rushed across the street at Simpson. Throwing a small bundle he had in his hands aside, he took out his knife and assaulted Simpson, who repelled the attack, knocked off the blows and struck young Melvin in the face with his hand. While this strife was thus proceeding, Dick Melvin, the defendant, with a knife in his left hand, rushed up behind and to the left of Simpson and stabbed him. The knife passed through the walls of the abdomen and entered the abdominal cavity, creating a wound which confined him to his room and bed for a month, and was considered by the physicians as extremely dangerous and hazardous. Immediately after the cutting, the defendant, Al. Melvin and Owens hurriedly left the State and the defendant when arrested was in the State of Kansas, and at first refused to return to Missouri without requisition papers, but finally did so. When defendant saw the blood from Simpson's wound he said, "My God, boys, let's hit her for Kansas," and they all three ran off as fast as they could go, and crossed the river into Kansas.

On the part of defendant the evidence tended to show

that Jeff Simpson began the assault. That Al. Melvin did the stabbing and that defendant had no knife. Al. Melvin testified he did the cutting.

Other facts will be noted if necessary in the opinion. The jury found defendant guilty, and assessed his punishment at two years in the penitentiary.

I. The first insistence is that the court erred in refusing to sustain the motion to quash, or plea in abatement, to the indictment returned on December 7, 1899, under which the defendant was convicted.

Section 2522, Revised Statutes 1899, which has remained unchanged in all the revisions of the general statutes of this State since 1845, provides that "if there be at any time pending against the same defendant two indictments for the same offense or two indictments for the same matter although charged as different offenses, the indictment first found shall be deemed to be suspended by such second indictment, and shall be quashed."

In State v. Eaton, 75 Mo. loc. cit. 589, wherein the contention was that until the first indictment was quashed by the court, the defendant could not be put on trial on the second indictment, relying upon State v. Smith, 71 Mo. 45, and State v. Webb, 74 Mo. 333, this court said: "There is nothing in the section to impair, in any manner whatever, the second indictment. Certainly a plea to the jurisdiction could not be maintained. The court does not lose jurisdiction of the cause, because a former indictment, unquashed, was preferred. The right of the State to find a second indictment against the accused for the same offense, is distinctly recognized by the statute. The accused may have the first quashed. The court might, without any motion filed by him for that purpose, quash the first indictment, but whether it is quashed or not, is a matter of no consequence in the prosecution on the second indictment."

Subsequently the same language was reiterated in State

v. Vincent, 91 Mo. loc. cit. 665, and in State v. Anderson, 96 Mo. loc. cit. 246, but in State v. Daugherty, 106 Mo. 182, in which the same question arose, THOMAS, J., in writing the opinion went farther and announced that "the effect of the second indictment *was to quash the first,*" citing State v. Vincent, 91 Mo. 662.

We have seen that the point in State v. Vincent was not whether the finding of the second indictment *ipso facto* quashed the first, but whether the fact that the first was not quashed would prevent a trial on the second, and so this remark of the learned judge which was not necessary to the determination of that case, was not supported by the authority upon which he rested it and he did not advance any reason for the assertion.

So that the above cases, outside of this decision, do not reach the point now made by defendant that the preferment of the second indictment *ipso facto* quashed the indictment under which he was convicted, and when in turn the second was formally quashed, there remained no legal charge against him and he was not required to plead it. We are of opinion that his position is untenable.

The language of the statute is, "the indictment first found shall be deemed to be suspended by such second indictment and shall be quashed." The language is not "superseded," as in the New York statute. The first is merely suspended, but new life and validity may be imparted to it by the removal of the obstacle which caused the suspension, to-wit, the second indictment, as was done in this case by quashing it on the record.

Moreover, it appears plain to us that this court in State v. Eaton, 75 Mo. 588 and 589, did not construe the second indictment as quashing the first *eo instanti* it was preferred and filed, because the Attorney-General urged the court in that case to adopt that construction of this section, but its decision falls short of so doing.

Chief Justice SAVAGE, in construing the New York statute (R. S. 1829, sec. 42, vol. 2, p. 726), says the first indict-

ment is *superseded* by the second, and *liable to be quashed,* People v. Fisher, 14 Wend. 9, and no greater effect can be given to the words of section 2522, Revised Statutes of Missouri 1899. Giving the words of this section their ordinary and usual sense, as we are commanded to do in the construction of statutes in the absence of a clear intent of the Legislature to the contrary, the word "suspended," means "to cause to cease for a time; to interrupt; to delay" and the statute requires the first indictment to remain suspended pending the period the second is in force unless actually quashed by the court on the record, but if the second is itself quashed without the first having been quashed, the first is restored to all its vigor, and we are not authorized to hold that it is quashed *ipso facto,* by the preferment of a second indictment. We think that the whole section read together requires the court to order it quashed before it can be held to be void and incapable of further efficacy under any and all circumstances. It follows that State v. Daugherty, 106 Mo. 182, went too far and should not be further followed on this point.

"Superseded" in the New York statute is a stronger word than "suspended" in ours, and yet we have seen the New York court hold that the first indictment was only *"liable"* to be quashed by the finding of the second, and not in fact quashed, a view which has been three times re-asserted since. [People v. Bransby, 32 N. Y. 536, 537; People v. Barry, 4 Parker's Crim. Rep. 661; People v. Oyer & Terminer, 20 Wend. 108.]

The circuit court, therefore, did not err in holding the first indictment was still in full force after the second was quashed on its record.

II. There was no error in instructing the jury, as the court did, that if they found the defendant either himself feloniously and on purpose cut and stabbed Simpson with a deadly weapon, or was then and there present feloniously aiding and abetting another person in such cutting and stabbing

said Simpson, then he was equally guilty of such felonious assault.    Under our laws defendant was a principal in either case, and was properly chargeable as such, and this was exactly what defendant asked and the court instructed at his own request.    His first instruction is in these words:

"1.    The jury are instructed that unless they believe from the evidence beyond a reasonable doubt that Jeff Simpson was assaulted, and cut and stabbed, as charged in the indictment, by Dick Melvin, or unless they believe beyond a reasonable doubt that Dick Melvin was present, aiding and abetting in said alleged assault, they shall find the defendant not guilty. A reasonable doubt is a substantial doubt, touching defendant's guilt, and not a mere possibility of his innocence."

Defendant can not complain of error which he invited.

III.    The instruction on the presumption from flight was eminently proper under all the evidence.    A stronger, clearer case of flight has not come under our observation.

IV.    The court did not err in failing to instruct on motive.    It gave none on that subject for the State, and none was requested by the State, and no request was made by the defendant to have the court instruct upon all the law of the case.    [State v. Cantlin, 118 Mo. 100; State v. David, 131 Mo. 381.]

The instructions for defendant were exceedingly favorable and all that the facts justified.    We find no error in this record and the judgment is affirmed.    All concur.