THE STATE v. CLAY, Appellant.

Division Two, March 5, 1907.

1. **MURDER: First Degree: Indictment.** Indictment for murder in the first degree, set out in the statement, *held*, to embrace every allegation necessary to constitute the offense.

2. ————: **Reducing Grade of Homicide: Apprehension of Assault: Reasonable Cause: Instruction.** In order to reduce a homicide from murder to manslaughter, it is not only essential that defendant believed he was in danger when he fired the fatal shot, but the facts must furnish a reasonable cause for his so believing; and whether or not such reasonable cause existed is a question for the jury. And an instruction is properly refused which tells the jury that though they might believe from the evidence defendant did not have reasonable cause to believe deceased was about to assault him, or do him some great bodily harm, yet if the defendant honestly believed deceased had such design, and shot to prevent its accomplishment, they could not convict him of either degree of murder.

3. ————: ————: **Manslaughter: No Evidence.** The trial court properly refused to instruct on manslaughter in the fourth degree, for the reason that there was no evidence to authorize such an instruction.

Appeal from Boone Circuit Court.—*Hon. A. H. Waller, Judge.*

AFFIRMED.

*H. D. Murry, J. J. Spriggs* and *E. W. Hinton* for appellant.

(1) The court erred in overruling the motion to quash the indictment because of its failure to charge that the mortal wound was feloniously and maliciously inflicted. State v. Herrell, 97 Mo. 105; State v. Woodward, 191 Mo. 617; State v. Birks, 97 S. W. 578. (2) The court erred in refusing defendant's instruction 8 to the effect that if defendant honestly believed that

deceased was about to assault him with a knife and shot to prevent the accomplishment of such design, he could not be convicted of murder in either degree, though he may not have had reasonable grounds for such belief, because in that event the crime would be manslaughter. Wharton on Homicide, sec. 527; Kerr on Homicide, sec. 169; Rex v. Hall, 3 C. & P. 409; Partlow's Case, 90 Mo. 608.

*Herbert S. Hadley,* Attorney-General, *N. T. Gentry,* Assistant Attorney-General, and *F. G. Harris* for the State.

(1) The indictment charges the defendant with murder in the first degree, and is sufficient in form and substance. It alleges all of the statutory elements necessary to constitute that crime, and follows the approved forms. R. S. 1899, sec. 1815; State v. Kindred, 148 Mo. 279; State v. Burns, 148 Mo. 172; 3 Chitty's Crim. Law, 752; State v. Privitt, 175 Mo. 224; Wharton's Precedents, 117a and 117b; Bishop's Directions and Forms, sec. 520; State v. Rice, 149 Mo. 465. (2) Defendant's instruction 8, which the court refused, was clearly not the law and was properly refused. State v. Westlake, 159 Mo. 679. This court has always held that defendant must not only believe that he is in danger when he kills his adversary, but he must have reasonable cause to so believe; and whether or not he has reasonable cause is a question for the jury to pass on. State v. Frazier, 137 Mo. 333; State v. McKenzie, 177 Mo. 714; State v. Stockton, 61 Mo. 382; State v. Parker, 106 Mo. 224; State v. Eaton, 75 Mo. 592.

FOX, P. J.—This cause is now pending in this court upon appeal by the defendant from a judgment of the circuit court of Boone county, Missouri, convicting the defendant of murder of the first degree. On October 14, 1905, the grand jury of Boone county re-

turned an indictment charging the defendant with murder in the first degree. As the sufficiency of the indictment is challenged, it is well to here reproduce it. It is as follows:

"State of Missouri, County of Boone.
"In the Circuit Court, October Term, 1905.
"The grand jurors for the State of Missouri, summoned from the body of the inhabitants of Boone county, being duly empaneled, sworn and charged to inquire within and for the body of the county of Boone aforesaid, on their oaths present and charge that Tom Clay, at Boone county, Missouri, on the tenth day of October, 1905, in and upon one Warren Merideth, in the peace of the State there being, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and that the said Tom Clay, a certain pistol then and there charged with gunpowder and leaden balls, which said pistol he, the said Tom Clay, in his hands then and there had and held, then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did discharge and shoot off, to, against and upon the said Warren Merideth, and that the said Tom Clay, with the leaden balls aforesaid, out of the pistol aforesaid, then and there by force of the gunpowder aforesaid, by the said Tom Clay discharged and shot off as aforesaid, then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did strike, penetrate and wound him, the said Warren Merideth, giving to him, the said Warren Merideth, in and upon the left side, and front part of the head of him, the said Warren Merideth, one mortal wound of the depth of about four inches and the breadth of about one-half inch, of which mortal wound he, the said Warren Merideth, at the said county of Boone and State of Missouri, on the said tenth day of October, 1905, then and there instantly died. And so the grand jurors aforesaid,

upon their oaths aforesaid, do say: That the said Tom Clay, him, the said Warren Merideth, then and there by means aforesaid, at the county and State aforesaid, on the day aforesaid, feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought, did kill and murder; against the peace and dignity of the State.

"F. G. HARRIS,<br>"Prosecuting Attorney.

"A True Bill.

"J. W. READ,

"Foreman of the Grand Jury."

The defendant entered his plea of not guilty and at the October adjourned term, 1905, of said court he was put upon his trial. At the trial the following state of facts was developed:

The State's evidence substantially tended to prove that on the 10th of October, 1905, Mr. Wigginton was acting as bartender in the Blue Front saloon in Columbia, and that Alex Hicks had charge of that portion of the bar which was used by colored persons. The defendant and deceased and most of the State's witnesses are negroes, and the shooting occurred in the west part of the saloon. The Blue Front saloon was operated by Mr. Kreutz, formerly by Mr. Victor, and faces east on Ninth street, in Columbia; it has an alley on the north and west sides of it. The front door opens to the east; the side door opens to the north and the back door opens to the west; the bar is on the south side of said saloon. About four o'clock on the afternoon of said day, the deceased was standing at the bar talking to a relative of his and smoking. The defendant came in the north door of said saloon, spoke to Alex Hicks, who was behind the bar, said something about going on a fishing trip, lighted a cigar and went out the west door. At that time John Grant, Turner Bass, Lawrence Diggs, John Emerson, Walter Hunt and Emmet Kimbrough were in said saloon, some talking, some drinking, and

others smoking. In a short time, variously estimated at from five to ten minutes, the defendant returned with a pistol in his right hand, hanging down by his side; deceased was still standing in the same position at the bar. Defendant walked within about four feet of the deceased, leveled the pistol at him and fired two shots; the deceased fell to the floor, and the defendant fired a third shot. All three of said shots took effect in deceased and death was almost instantaneous. The defendant endeavored to fire his pistol a fourth time, but for some reason it was not discharged. The defendant then went out the west door, walked around to the north alley and on toward Ninth street. The coroner, M. P. Parker, was called and the body of deceased examined and removed. Dr. J. E. Thornton, who held the post-mortem examination, testified that he found three wounds on the body of deceased. The wounds indicated that one bullet entered about the middle of the back, one bullet entered about an inch below the right ear, and the third bullet entered about an inch above the left eye. Either wound was sufficient, in the opinion of the physician, to have produced instant death. In deceased's pockets the coroner found some tobacco, a memorandum book and an old knife; the knife was shut up. All the State's witnesses testified that not a word was spoken by the defendant nor by deceased at the time of nor just prior to the shooting, and the deceased never moved from the position he was in when defendant was in the saloon the first time till deceased's body fell to the floor. The State's evidence further showed that some time in the afternoon the defendant was at a colored barber shop and showed a pistol to Robert Bannister, stating that he had had trouble with the deceased that morning and that if it had not been for Mr. Victor, deceased would have killed him. Defendant further said: "I left there this morning to keep out of trouble; but I am going back this afternoon, and if

Warren looks like he wants to do anything to me, I will pull out my gun and fill him full of holes.''

The defendant's evidence tended to prove that he had had trouble with the deceased that morning; that deceased drew a knife and put it in his pocket and looked like he was mad at the defendant, and at the time of the shooting the defendant says that the deceased suddenly turned toward him and at the same time reached his hand in his trousers pocket, and believing from the actions of deceased that he, the deceased, was about to attack him with a knife, which he had previously seen, he immediately began to shoot. The defendant made complaint of the first trouble to the city marshal, Mr. Rogers, who advised him to keep out of deceased's way, and I told him he had a right to protect himself, if necessary. The defendant also introduced evidence tending to show that some twenty years before the deceased had served a term in the penitentiary for burglary and larceny, and also that nine years before a coroner's jury found that one George Candy came to his death by reason of having been shot by the deceased, Warren Merideth.

In rebuttal, the State proved that the deceased was never indicted nor prosecuted for the murder of George Candy.

At the close of the evidence the court very fully and fairly instructed the jury upon every possible phase of the case to which the testimony was applicable. The instructions for the State covered murder in the first and second degrees, appropriately and correctly defining the essential elements of those grades of crime, and those for the defendant presented with extreme liberality the law upon self-defense, reasonable doubt, credibility of witnesses and of the weight to be given to their testimony. Learned counsel for appellant neither in their brief nor oral argument challenge the correctness of the instructions as given, therefore we deem it unnecessary to burden this opinion with a reproduction of

them; counsel for defendant did, however, request the court to give the following instruction:

"The court further instructs the jury that, although they may believe from the evidence that the defendant did not have reasonable cause to believe that Merideth was about to assault him with a knife, or do him some great bodily harm, still if the defendant honestly believed that the deceased had such a design and shot to prevent its accomplishment, then the killing was not done of his malice aforethought, and he cannot be convicted of murder in either degree, though he cannot be entirely justified." Which instruction was by the court refused, and to the action and ruling of the court the defendant, by his counsel, then and there at the time duly excepted and saved his exceptions.

In addition to the specific instructions asked and requested by the defendant, the defendant prayed the court to instruct the jury fully on all questions of law involved in this case, but the court refused to give any other instructions for the defendant except the specific instructions asked by the defendant, and given by the court, and to the failure and refusal of the court to further and fully instruct the jury, as requested by defendant, the defendant then and there, by his counsel, at the time duly excepted and saved his exceptions.

The cause was submitted to the jury upon the evidence and instructions of the court and they returned their verdict finding the defendant guilty of murder of the first degree. Sentence was pronounced in accordance with the verdict, and from that judgment the defendant in due time and proper form prosecuted his appeal to this court, and the record is now before us for consideration.

OPINION.

There are but two legal propositions presented by learned counsel for appellant for the consideration of this court:

1st. The sufficiency of the indictment is challenged.

2d. It is earnestly insisted that the court committed error in refusing instruction numbered 8 as indicated in the statement of this cause, and in failing to instruct the jury upon manslaughter in the fourth degree.

We will treat of these propositions in the order as above indicated.

## I.

We have carefully analyzed every allegation embraced in the indictment in which the defendant is charged with the highest crime known to our law. We have carefully examined the precedents in cases of this grade and character which have repeatedly met the approval of this court, as well as the precedents by such distinguished authors as Chitty, Wharton and Bishop, and find that the indictment in this case in every essential particular conforms to those precedents. In State v. Kindred, 148 Mo. 270, the indictment was in precisely the same form as in the case at bar; in fact, no one can read the indictment in the case now before us and escape the conclusion that the pleader was following the precedents as laid down in the Kindred case. GANTT, J., in responding to the challenge of appellant to the indictment in that case, said: "No more certain and specific charge of a deliberate and felonious wounding is to be found in the well-considered precedents in criminal pleading. It fully measures up to the standard approved by Chitty, Wharton and Bishop," citing, in support of this announcement, 3 Chitty's Criminal Law, margin page 752; Wharton's Precedents of Indictments and Pleas, 117a and 117b; State v. Snell, 78 Mo. 240; Com. v. Costley, 118 Mass. 1; State v. Coleman, 5 Porter (Ala.) 32; Kelley's Crim. Law, sec. 474; State v. Thomas, 99 Mo. 235; State v. Herrell, 97 Mo. 105; State v. Steeley, 65 Mo. 218; State v. Green, 111 Mo. 585; 2 Bishop's New Crim. Proc., sec. 541, note 1.

In our opinion this indictment clearly embraces every essential allegation necessary to constitute the offense of murder of the first degree and is in such form as has repeatedly met the approval of this court. [State v. Privitt, 175 Mo. 224; State v. Rice, 149 Mo. l. c. 465-66.]

Our attention has been directed by learned counsel for appellant to the cases of State v. Herrell, 97 Mo. 105; State v. Woodward, 191 Mo. 617; State v. Birks, 199 Mo. 263; and State v. Williams, 184 Mo. 261. It is sufficient to say of those cases that a careful analysis of the indictments or informations which were condemned by this court and held insufficient, discloses that they in no way conflict with the conclusion reached in this case. We are unwilling to overturn the rules announced in the cases as herein indicated, which have so clearly pointed out the essential allegations in charging murder in the first degree, and see no good reason for departing from such rules.

## II.

We are unable to agree with learned counsel for appellant upon their second contention, that the court erred in the refusal of instruction numbered 8, and also erred in failing to embrace in its instructions manslaughter in the fourth degree. It is only necessary to analyze the facts as developed at the trial of this cause to reach the conclusion that such facts did not authorize the court in giving an instruction on manslaughter in the fourth degree. There is an entire absence of any of the elements of that grade of crime; there was no personal violence and no part of the evidence had a tendency to arouse such a sudden passion as would reduce the killing from murder in the first or second degrees to manslaughter in any degree. But counsel insist that even though the defendant may not have had reasonable ground for the apprehension of danger and that the deceased was about to do him some

great personal injury, yet if the defendant honestly believed that the deceased was about to inflict upon him some great personal injury, this was sufficient to reduce the killing from murder in the first or second degrees to manslaughter. It is only necessary to say upon this insistence that the law upon that subject has frequently had the careful attention of this court, and the ruling has been uniformly announced that a person in killing his adversary must act at his peril. It is not only essential that he must believe he is in danger when he fires the fatal shot, but the facts must furnish a reasonable cause for so believing; and it has always been held that whether or not such reasonable cause in fact existed, was a question to be determined by the jury. In State v. Westlake, 159 Mo. l. c. 679, Burgess, J., in discussing this question, expressly ruled that the mere fact that deceased may have threatened violence against the defendant did not justify the defendant in assaulting and killing him, but in order to have done so there must have been an actual attempt at assault or defendant must have had good reason to believe that deceased was about to assault him or to do him some great bodily harm. It was further ruled in that case that the facts disclosed by the record did not justify an instruction for manslaughter in any degree. If the evidence was believed the defendant was guilty of murder either in the first or second degree.

In State v. Frazier, 137 Mo. l. c. 333, and State v. McKenzie, 177 Mo. l. c. 713-14, instructions which required that the facts should furnish a reasonable ground for the belief that the party killed was about to inflict some personal injury upon the person who did the killing, were unqualifiedly approved. In State v. Parker, 106 Mo. l. c. 224, the defendant strenuously objected to an instruction which required that the facts should furnish a reasonable ground for the belief that some great personal injury was about to be inflicted

upon him, and this court thus clearly stated the law upon that subject: "The objection defendant urges to this part of the instruction is that it did not give him the right to act upon an honest belief that danger was impending, though there was, in reality, no reasonable ground for his apprehensions. To adopt such a rule would open a way of escape to every one charged with murder. How could the belief and apprehensions of a murderer be interpreted? 'He must decide at his peril upon the force of the circumstances in which he is placed.' [State v. Sloan, 47 Mo. 612.] The statute requires in justification of a homicide on the ground of self-defense, that reasonable cause to apprehend should have existed. [R. S. 1889, sec. 3462; State v. O'Connor, 31 Mo. 389; State v. Johnson, 76 Mo. 121; State v. Gonce, 87 Mo. 627; State v. Eaton, 75 Mo. 586; State v. Wilson, 98 Mo. 442.]"

In State v. Eaton, 75 Mo. 586, this court, in discussing the propriety of giving an instruction on self-defense, said: "On the evidence introduced for the defense, that instruction should have been given. [2 Wharton, Crim. Law, sec. 1026.] We do not mean to say that a mere supposititious or conjectural danger—a danger existing only in the imagination of the deceased, will excuse or justify a homicide. There must be an apparent danger affording a reasonable ground for apprehension on the part of the slayer, that unless he kill or disable his adversary, his own life or limbs are in imminent peril. Whether the appearances of danger to the accused were such as to afford such reasonable ground of apprehension, is a question for the jury."

The foregoing cases clearly indicate that in order to make a homicide justifiable it is essential that the defendant who interposes such defense show not only that he believed that his adversary was about to inflict some great personal injury upon him, but as well that

he had reasonable grounds for so believing. It is equally clear that he must decide at his peril upon the force of the circumstances in which he is placed, and the mere fact that he believed he was in danger of having some injury inflicted upon him, without reasonable grounds for basing such belief, certainly cannot have the effect to reduce the grade of the crime; to so hold would, in our opinion, recognize and announce a principle in criminal jurisprudence which would materially interfere with the infliction of punishment commensurate with the crime committed, as well as the proper administration of justice. The mere belief by defendant that he was in danger of having some injury inflicted upon him, without any reasonable grounds for entertaining such belief, has never been recognized by the courts of this State, or any other State to which our attention has been called, as being sufficient to reduce the grade of the crime from murder in the first or second degree to manslaughter, and we are unwilling to make this advanced step and announce this new rule in our criminal jurisprudence.

We have indicated our views upon the only two legal propositions presented in the brief of counsel for appellant, but in addition to that we have carefully considered the entire record, the evidence as well as all of the instructions of the court. An examination of this record clearly discloses that the defendant has had an exceedingly fair and impartial trial, in fact, the only errors disclosed in the record were committed against the State. The trial court was extremely liberal in the admission of testimony on the part of the defendant, and the instructions of the court were equally extremely favorable to the defendant. He has had the full benefit of able counsel, who have, as disclosed by the record, fearlessly and conscientiously discharged the duties imposed upon them by the court, and if this unfortunate defendant is to suffer the extreme penalty of the law,

the result of such punishment can only be attributed to his own unlawful and unjustifiable act in taking the life of his fellow man. This is a serious case, and in the discharge of our duty as an appellate court, we have carefully scrutinized in detail the entire record to ascertain if the defendant had in the trial court, as he was entitled to, a fair and impartial trial. We find that he has, and being unable to discover any error prejudicial to his rights, there is nothing left to be done except to announce that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.